## J. S. Strafford Publishing Company v. N. Stetson & Company, Appellant.

*Contracts—Construction—Ambiguous terms—Evidence—Custom.*

1. In the interpretation of a contract words are to be given their plain, ordinary and popular meaning, unless they have acquired a peculiar sense in respect to the particular subject-matter, or unless the contract shows that the parties used them in some other and peculiar sense.

2. The meaning of the terms of art and technical phrases when employed in a contract may be proved by extrinsic evidence, and in so doing the rule which prohibits the introduction of evidence to alter, vary or explain a written contract is not violated. In receiving such evidence the court does no more than when it refers to a lexicon to ascertain the meaning of a word. It is the only means of ascertaining the intention of the parties when they enter into the agreement and use an ambiguous expression, and when its meaning can be thus ascertained it must control.

3. Where a contract for the insertion of an advertisement in the programme of a vaudeville theater states that the insertion is "for the theatrical season of 1902 and 1903," parol evidence is admissible to show what was understood in the profession by the words "theatrical season," as applicable to vaudeville theaters, but evidence as to the signification of the words in connection with theaters of a different kind or class is not admissible.

Argued Oct. 12, 1909. Appeal, No. 139, Oct. T., 1909, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1903, No. 3,401, on verdict for plaintiff in case of J. S. Strafford Publishing Company v. N. Stetson & Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from judgment of magistrate.

The material portion of the contract upon which suit was brought was as follows:

"PHILADELPHIA, Nov. 8, 1902.

"The publishers reserve the right to refuse any advertisement of an objectionable character.

"Privilege weekly change.

"Keith's New Chestnut Street Theatre.

"Insert our advertisement in the Keith's Chestnut Street Theatre programme for the (no other piano house Ad. but Blasius & Sons) theatrical season of 1902 and 1903, to occupy space of opposite page 4, one page, for which we agree to pay ten dollars per week payable every four weeks."

At the trial the defendant asked one of his own witnesses the following question:

"Q. (Contract dated August 27, 1902, between defendant and Joseph T. Maculley for advertising defendant's business

in the theatrical programme of the Academy of Music for the season of 1902 and 1903, shown to witness.) What was the duration of the season named in that contract?"

Objected to. Objection sustained. Exception allowed defendant. [1]

"Q. (Similar contracts shown witness for advertising defendant's business in theatrical programmes for the theatrical season of 1902 and 1903, or thereabouts in the following theaters, namely, Broad Street Theater, Chestnut Street Theater, Chestnut Street Opera House, Park Theater, Walnut Street Theater, Garrick Theater and Girard Avenue Theater, shown to witness), and witness is asked to state the duration of the theatrical season in connection with said contracts."

Objected to. Objection sustained. Exception allowed defendant. [2]

Defendant presented these points:

2. If you find from the evidence that Keith's New Chestnut Street Theater was open continuously throughout the years 1902 and 1903, from and after the date of the contract between the plaintiffs and the defendant, and had no "season," then the contract is void for uncertainty, and you will find a verdict for the defendant. *Answer:* Refused. [6]

3. Under all the evidence in this case the jury is directed to find a verdict for the defendant. *Answer:* Refused. [7]

Verdict and judgment for plaintiff for $53.72. Defendant appealed.

*Errors assigned* among others were (1, 2) rulings on evidence, quoting the bill of exceptions; and (6, 7) above instructions, quoting them.

*Owen B. Jenkins*, for appellant.—The defendant should have been permitted to show by its contracts for advertising for "the theatrical season of 1902 and 1903" with the Academy of Music, the Broad Street Theater, Chestnut Street Theater, Chestnut Street Opera House, Park Theater, Walnut Street Theater, Garrick Theater, and Girard Avenue Theater, the duration of the theatrical season for that year as under-

stood at these theaters: Gratz v. Hoover, 16 Pa. 232; Meighen v. Bank, 25 Pa. 288.

The contention of the plaintiff that "season" means a year, contradicts all meaning of the word found in either law reports or common speech: Lovering v. Miller, 218 Pa. 212; Canary v. Russell, 9 N. Y. Misc. Reps. 558.

The testimony shows that the minds of the parties never met. Each was contracting, if not for the general season, for a different thing, and the contract is void for uncertainty: Hall v. Woolen Co., 187 Pa. 18.

If the contract was for "Keith's New Chestnut Street Theater theatrical season," it was a contract regarding something nonexistent, and the contract is void: Riegel v. Ins. Co., 153 Pa. 134.

*Charles S. Wood*, for appellee.—Oral evidence was admissible: Montague v. Flockton, L. R. 16 Eq. 189; Myers v. Walker, 24 Ill. 133; Leavitt v. Kennicott, 157 Ill. 235 (41 N. E. Repr. 737); Lovering v. Miller, 218 Pa. 212.

OPINION BY ORLADY, J., March 3, 1910:

The plaintiff was a publisher of theatrical programmes, and secured an order from the defendant in writing, the substance of which is: "Insert our advertisement in the Keith's Chestnut Street Theatre program for the theatrical season of 1902 and 1903," and the sole controversy in this case turns on the interpretation to be given to the expression "theatrical season of 1902 and 1903."

On the trial the defendant offered to prove, as shown by contracts made by him with advertisers in theatrical programmes, the duration of the theatrical season for 1902 and 1903, in the Broad street, Chestnut street, Park, Walnut street, Garrick and other theaters, and had the offer been coupled with the proposition that they were similar in kind or class to the new Keith's Chestnut Street theater, the testimony should have been received, but lacking this, the objection thereto was properly sustained. Nor was the contract void for uncertainty, as urged by appellant, the effect to be given the term

"theatrical season for 1902 and 1903" having been properly submitted to the jury as follows: "They made a contract with reference to Keith's new Chestnut Street Theater, and they made a contract which had in it a latent ambiguity, that is, they did not specify, as they might have done, the number of weeks during which the contract was to be performed, but that must be explained by outside evidence. What is the common understanding of the term theatrical season in the business, looked at from the point of view of the parties at the time they made the contract in relation to Keith's new Chestnut Street Theater."

In the interpretation of a contract words are to be given their plain, ordinary and popular meaning, unless they have acquired a peculiar sense in respect to the particular subject-matter, or unless the contract shows that the parties used them in some other and peculiar sense. While the new Keith's theater had been opened for but a few days at the time of making this contract, it was not pretended by the defendant that the general character of the theater was not known to him, nor is it claimed that it was not properly designated as a vaudeville theater, nor that the theatrical season for this particular theater was any different from that of the usual vaudeville theater. It appears from the evidence that the term "theatrical season," has no general significance in the profession, but it has a special meaning when applied to different grades of amusement places, and that the word "theater" may refer to what is popularly known as standard or legitimate, to the opera, or to vaudeville entertainments. It is practically conceded by the defendant that there is a marked difference among the theaters in regard to the duration of their season, and that the "theatrical season" as applied to vaudeville theaters consists of continuous performances for the whole year, while the length of the season of grand opera and some standard theaters may and frequently does depend upon whether there is a stock or permanent company, whether a particular building is used by companies staying for a period of time longer or shorter as may depend upon the popularity of the performance, or upon the particular time the exhibition

is given, such as the holiday season, the spring season, the fall season. While the proof is not as satisfactory as it might have been made, there was sufficient in the record for the court below to submit to the jury the one controlling question. The meaning of the terms of art and technical phrases when employed in a contract may be proved by extrinsic evidence, and in so doing the rule which prohibits the introduction of evidence to alter, vary or explain a written contract is not violated. In receiving such evidence the court does no more than when it refers to a lexicon to ascertain the meaning of a word. It is the only means of ascertaining the intention of the parties when they enter into the agreement and use an ambiguous expression, and when its meaning can be thus ascertained it must control: Hostetter v. Park, 137 U. S. 30; 34 L. Ed. 568. In McWilliams v. Martin, 12 S. & R. 269, the words were held to be doubtful, and the point to be inquired into was to ascertain the intent of the parties. The court held that if the intent be as doubtful as the words, inquiry will not aid in the matter; but if inquiry will make it plain, we ought to put the construction on it which will best answer the intention even though the words be doubtful. In Lovering v. Miller, 218 Pa. 212, a theatrical contract in writing provided for an engagement for the regular season, but the contract did not disclose what was intended by the words "regular season," it was held to be proper to receive parol evidence to show the common understanding in the theatrical business as to what that term included, and that with this evidence, the case should go to a jury to find the exact terms of the contract. See also Yost v. Anchor Fire Ins. Co., 38 Pa. Superior Ct. 594.

The length of the season at other theaters in the city was not material, unless they were of the same class as this particular theater, it being clearly shown that the theaters differ so radically in regard to their season that what was a custom in one, did not bind a person contracting in relation to another theater of an entirely different class or type. The case was fully and carefully tried in the court below, and we find no reversible error in the record presented to us.

The judgment is affirmed.