## Roylance Co. v. Descalzi, Appellant.

*Contracts—Parol evidence to vary written contracts—Words with special trade significance—Evidence to show meaning—Sales —Contracts of sales—Locus of contract.*

1. Where a word with a special meaning or a trade phrase appears in a contract, it is competent if justice so requires to introduce evidence to show the real sense in which the words were used, or that they have a generally known fixed trade significance; but where a word has a common or generally accepted ordinary meaning, that meaning will be supposed to have been the one intended, unless it be plain from the context or is properly made to appear that the word was used in some other sense.

2. A contract between a Utah corporation and a Pennsylvania firm for the sale of fruit to the Pennsylvania firm is properly designated a Utah contract, where it appears that all the correspondence centered at a point in Utah and that the contract was for the sale of Utah pears f. o. b. cars in that state.

3. Where in a contract a special trade meaning is alleged to be the proper meaning of a word used, the party setting up the special meaning of such term must show that the word in question had a uniform established trade significance or an established

local trade meaning at the place where the contract was made, or that the other party to the contract knew of the alleged special meaning; otherwise the word will be taken in its ordinary meaning.

4. In an action of assumpsit to recover damages for the breach of a contract to purchase pears, it appeared that defendants, a Pennsylvania firm, had agreed to buy of plaintiff, a Utah corporation, "strictly fancy" pears f. o. b. cars Utah; that plaintiff delivered the pears to a railroad company, but that on the arrival of the pears defendants refused to accept them. Plaintiffs thereupon sold the pears and sought to recover the difference between the contract price and the price realized. It appeared that there were known to the trade three grades of pears, "extra fancy," "fancy" and "choice." Defendants contended that the words "strictly fancy" constituted a trade phrase synonomous with "extra fancy" and that the pears shipped were of the second or "fancy grade" and did not comply with the contract. The trial judge excluded evidence to show that the word "strictly" was used with the special trade meaning of "extra fancy" on the ground that defendants had not shown that the word "strictly" had any special trade meaning or that it had been used by plaintiffs in any other sense than to signify that the pears were "strictly" of the second class. The jury found a verdict for plaintiff upon which judgment was entered. *Held*, no error.

*Practice, Supreme Court—Assignments of error—Defective assignments.*

5. An assignment of error complaining of the trial judge's answer to a point presented by the appellee, but not setting forth the full answer, is defective and will not be considered.

Argued Oct. 20, 1913. Appeal, No. 21, Oct. T., 1913, by defendants, from judgment of C. P. Allegheny Co., Jan. T., 1910, No. 827, on verdict for plaintiff in case of The William M. Roylance Company, a corporation, v. Eugene Descalzi, John B. Descalzi, L. J. Descalzi, Peter L. Descalzi and Angelo Descalzi, partners trading as Descalzi Fruit Company. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover damages for breach of contract for the purchase of fruit. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,543.85 and judgment thereon. Defendants appealed.

*Errors assigned* were various rulings of the trial judge, various instructions to the jury and answers to points.

*John C. Bane,* with him *Abraham Seder,* of *Alpern & Seder,* for appellant.

*George H. Rankin,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1914:

The plaintiff company is a wholesale fruit dealer in the State of Utah and the defendants are fruit and produce merchants in Pittsburgh; the latter agreed to purchase from the former two carloads of Bartlett pears at a stipulated price; the contract was evidenced by correspondence between the parties beginning with a letter dated August 20, 1909, in which the plaintiff offered to sell Bartlett pears "f. o. b." cars in Utah, stating the "stock is strictly fancy"; subsequent communications show that the purchase was made f. o. b. cars Utah, and it was conceded at argument that the plaintiff was obliged to deliver and the defendants to accept the kind of pears described in the initial letter of August 24th. When the fruit arrived it was refused, and the shipments were disposed of at public sale. The plaintiff sued for the difference between the contract price and the sum realized on sale, and secured a verdict for the full amount claimed; the defendants have appealed.

At trial the plaintiff contended that it had delivered the precise fruit contracted for, while the defendants claimed, first, that the pears were not up to the grade or class specified, next, that they were not properly packed, and lastly, that they were not in good condition. The principal questions before us arise out of rulings

with reference to the first defense. The plaintiff produced evidence that Bartlett pears were divided into three grades or classes, first, "extra fancy," second, "fancy," and third, "choice"; it maintained that the word "strictly" had no technical or special trade meaning, and that it had been used only in its ordinary sense. The defendants contended and testified that the words "strictly fancy" constituted a trade phrase which was synonymous with "extra fancy" and signified that the pears were of the first class or grade. Under the court rules in Allegheny County, a trial is confined to the issues raised by the statement of claim and the affidavit of defense. Although the affidavit in this case did not expressly aver that the pears were not of a particular specified class or grade, yet, the court below construed it liberally and permitted evidence along the line of the defense brought forth at trial; but subsequently the trial judge struck out so much of the defendants' evidence as directly referred to "strictly fancy" and "extra fancy" being synonymous trade terms, and held that the word "strictly" must be given its ordinary meaning. The rulings to this effect appear to have been made upon the ground that the defendants had not sufficiently shown by competent evidence that the word "strictly" had any generally known special trade meaning, or that in this instance it had been used in any sense other than to signify that the pears were "strictly" of the "fancy," or second class. The important question is, Did the court err in these rulings?

Of course, where a word with a special meaning or a trade phrase appears in a contract, it is competent, if justice so requires, to introduce evidence to show the real sense in which such word or words were used, or, in a proper case, that they have a generally known fixed trade significance; for the theory is that when a trade meaning of this character is established, the parties are presumed to have contracted with a view and in relation thereto, as much as though the special meaning of

the words were expressed at large. But where a word has a common or generally accepted ordinary meaning it is supposed to have been so intended, unless it be plain from the context or is properly made to appear that the word was used in some other sense. Here the defendants did not attempt to explain the words used in connection with the subject matter of the contract by proof of a course of prior dealing, or by evidence of what the parties said or did at the inception of their agreement, as shedding light upon the intended meaning of the language employed, or as showing that the words had some particular meaning between the parties; but the effort was to prove a technical, or special trade meaning for the word "strictly" in its relation to "fancy." The difficulty is, however, that when the word "strictly" is taken with its context as it appears in the writing in this case, it makes good sense when given its ordinary meaning and does not necessarily import a trade phrase, nor is it equivocal, and the testimony relied upon does not raise or demonstrate any latent ambiguity in its use. More than this, the testimony did not show, nor did the defendants offer to prove how widely, uniformly or long, the words "strictly fancy" were or had been understood in a trade sense to mean the same as "extra fancy"; again, the testimony and offers relating to the general understanding of these words in the "produce trade" were not to prove their meaning in the "fruit trade," nor was there any offer to show that the two trades were practically the same; lastly, the only defendant who took the stand admitted that he could not prove a general and uniform trade meaning throughout the country for the words in question. This witness frankly said that he did not know whether the meaning he contended for was in vogue in Utah, and he admitted that in his experience he had never seen fruit boxes from that part of the country marked "strictly fancy"; on the contrary, he stated that all the boxes he had observed were stamped "extra

fancy," to imply "a grade of the very best," "fancy," for the "second grade," and "choice," for the "third grade"; furthermore, the other witnesses called by the defense were no better qualified to prove a generally known established trade meaning than was this defendant, and their testimony was no stronger in this respect.

Thus on the defendants' own showing, since they were unable to prove that the words in question had a uniform, established trade significance, the meaning which they sought to fasten upon them would have to be accounted local and foreign so far as the plaintiff is concerned; for that reason, if for no other, in the absence of proof that the plaintiff knew of the alleged special meaning, there could be no presumption that it used "strictly" in connection with "fancy" in other than its ordinary sense (Miller v. Wiggins, 227 Pa. 564); and since the defendants did not prove or offer properly to prove an established local trade meaning or anything sufficient in law to justify their ex parte understanding, they showed no warrant whatever for giving the words the import insisted upon. Under the circumstances, there was no issue for the jury, and we conclude that the court below did not err in holding that the written contract was for the sale and delivery of Bartlett pears to be "strictly" of the class or grade known as "fancy," which, according to the meaning agreed upon by all the witnesses in the case, signified pears of the second class; and this is the fruit which the jury found was delivered to the defendants.

The first six assignments of error relate to rulings upon the testimony; they are sufficiently covered by what we have already written. When the excerpts from the charge complained of in the next three assignments are read in connection with their context no harmful error appears. But it may be well here to note that the plaintiff resides in Utah, that all the correspondence centered at that point, and that the contract was for the sale of Utah pears, f. o. b. cars in that state; hence the

court below was justified in designating the agreement between the parties as a Utah contract. Although in the charge and in making some of his rulings the trial judge may have used language which was a loose, or inexact expression of thought upon the fact that the pears were purchased under a Utah contract, yet, since he was right in substance, the practical effect of what he said was not harmful. The language complained of in the 10th assignment, to the effect that the delivery of the pears to the railroad was a delivery to the defendants, was a correct statement of a rule of law, and when taken in connection with the other instructions in the case it could have done no harm. An examination of the record shows that the full answer made by the court to the plaintiff's 4th point is not set forth in the 11th specification of error; hence this assignment is defective and will not be considered. The answer to the request referred to in the 12th assignment could have done the defendants no harm, since they did not contend that they had not purchased the fruit. The general views expressed in the beginning of this opinion sufficiently dispose of the other assignments.

It remains but to say that under the whole body of evidence, including the testimony rejected and stricken out, the issues involved were submitted without harmful error; the jury were told that the burden was upon the plaintiff to show that it had carried out the contract, and that unless it satisfied them that the two carloads of pears were "strictly" of the "fancy" grade— that is, up to that standard in every particular, there could be no recovery. The testimony on the subject of the alleged defective packing of the fruit, and the consequences ensuing therefrom, was vague and indefinite; but that defense does not appear to have been insisted upon. A witness for the plaintiff testified that the "fancy" class of Bartlett pears represented the "best commercial pears grown," but as we understand his deposition, he simply meant by this that the "fancy"

was the best selling grade of Bartlett pears. The jury had ample evidence to sustain a finding that the pears delivered were of that grade; the plaintiff's witnesses so testified and the defendant who took the stand, in his testimony in chief, admitted this fact, as did practically all the witnesses. As to the state of the fruit when it arrived in Pittsburgh, the persons who examined it for the defendants agreed that it was not in bad condition; although some of the witnesses said that the fruit was "rusty," yet most of them stated it was "clean" and "not blemished." After a comprehensive study of the testimony, and full consideration of all the legal points urged upon us, we feel that there was evidence sufficient to sustain the verdict, and we are not convinced of reversible error.

The assignments are overruled and the judgment is affirmed.