## Zimmerman's Estate

F. B. *Moser*, for accountant; *Harold Ripple*, for exceptant.

MORGANROTH, P. J., February 26, 1934.—Two questions are presented on exceptions to the auditor's interpretation of the will of Henry S. Zimmerman, deceased: (1) The date of payments of the bequests to the several grandchildren; and (2) whether or not said bequests bear interest and, if so, from what date.

Item 11 of the will provides, inter alia:

"Before final distribution of my estate is made, and before my children can share in the final settlement thereof, I order and direct, and give and bequeath that, the sum of one thousand ($1000.00) dollars in cash, shall be paid into the hands of The Guarantee Trust & Safe Deposit Co. of Shamokin, Pa., in trust . . . for the purpose of maintaining and keeping . . . the cemetery lot located in what is known as the Plum Creek Cemetery; . . . and further before final distribution of my said estate is made, I give and bequeath unto each of my grandchildren, now born, or which may be born during my lifetime, the sum of one thousand ($1000.00) dollars at and upon their arriving respectively at the age of twenty-one years, and those, who have passed the said age of twenty-one years. . . . Excepting the said bequest of one thousand ($1000.00) dollars, to my grandchild, Henry Zaring, a son of my daughter Laura Zaring, and Charles R. Zaring, which I give and bequeath unto his said mother, my said daughter, Laura Zaring, in trust, that she shall invest the same, as she may see fit, and use and expend the net income thereof for the benefit and comfort of her said son, Henry Zaring, as she may see fit; . . . and at and upon the decease of my said grandson, Henry Zaring, I give and bequeath the said principal fund held in trust as aforesaid, to be equally divided between the sisters of the said Henry Zaring, or the survivor of them, their heirs or assigns."

The will further provides (item 3) that the decedent's widow shall have a life interest in the homestead, the sum of $2,000 per annum, and such additional necessaries of life, medical attendance, and nursing as she may require; that (item 7) the stocks and bonds in possession of the decedent shall be divided equally between his children; and that (item 8) the net income of the estate shall be in like manner divided semi-annually. Item 10 directs that the executor shall in 5 years after testator's decease, or in 5 years after the decease of his said wife, if she survives him, settle up the estate finally, leaving the con-

veyances of properties to his children or sale thereof entirely to the best judgment of his executor. Then follows item 11, at the end of which the testator further desires and requests his executor to consult at all times during the time of the settling up of his estate, with his friend, William E. Ressler, "he having intimate knowledge of my affairs and of my wishes in the settling up of my said estate and matters pertaining thereto."

William E. Ressler, who was the scrivener and a witness to the will, was called before the auditor and testified, under objection, as to the expressed intention of the testator with regard to the date of payment of the bequests to the several grandchildren. In his report, the auditor properly decided that the testimony was not admissible: Henry, Pennsylvania Trial Evidence (2d ed.), par. 382; Best v. Hammond, 55 Pa. 409; Mizener's Estate, 262 Pa. 62; Kemerer's Estate, 251 Pa. 282; Keech et al. v. Delaware County Trust Co., Admr., 297 Pa. 442.

Counsel for the executor contends, as held by the learned auditor, that the two provisions of item 11 of the will, to wit, "and before final distribution of my said estate is made" and "at and upon their arriving at the age of twenty-one years respectively", are apparently contradictory; and, citing Clark's Estate, 99 Pa. Superior Ct. 490, the auditor reports: "for the purposes of interpreting this part of item 11, we will disregard the words 'at and upon their arriving at the age of twenty-one years.'" We are of opinion that these words cannot thus be disregarded.

The issues here raised were originally controlled by the provisions of the Act of February 24, 1834, P. L. 70, sec. 51. This statute was repealed by the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 21, of which provides as follows:

"Legacies, if no time be limited by the will for the payment thereof, shall in all cases be deemed to be due and payable at the expiration of six months from the death of the testator. Interest on all pecuniary legacies, whether bequeathed directly or in trust, shall, unless a contrary intention appear by the will, begin to run from the expiration of one year from the death of the testator; except that, if the account of the executor be filed and confirmed and distribution awarded before the end of such year, then interest on such legacies shall run from the date of the award: Provided, That where a pecuniary legacy is bequeathed to or for the use of the widow of the testator, or any child or descendant of the testator, or any person toward whom the testator in his lifetime stood in loco parentis, or for the maintenance of any person, interest shall, unless a contrary intention appear by the will, begin to run from the date of the death of the testator."

The will of the testator, in clear language, provides bequests to each of his grandchildren at and upon their arriving respectively at the age of 21 years. The courts have always held that words must be given their plain, ordinary, and popular meaning: J. S. Strafford Publishing Co. v. N. Stetson & Co., 41 Pa. Superior Ct. 560; Electric Reduction Co. v. Colonial Steel Co., 276 Pa. 181; Roylance Co. v. Descalzi, 243 Pa. 180; and it is evident by the use of the word "respectively" that the testator did not intend that the grandchildren should receive their bequests at the same time, but rather as and when each arrived at the age of 21 years. Were the language of the bequest not entirely plain, and were it necessary to look to the four corners of the will to gather the testator's intention, it should be noted that in the same item the bequest of $1,000 to the grandchild, Henry Zaring, is given in trust, that the net income thereof may be used for the benefit and comfort of the said grandchild. It

cannot well be contended that the testator would have made provision for the benefit and comfort of a certain grandson if he had in mind that payment of the bequest be deferred indefinitely or, as it now appears, 14 years after the death of the testator, and indeed after the death of the grandson, Henry Zaring, himself.

Nor can we gather any intention from the will that the wide discretionary powers given the executor were with relation to payment of the sum of $2,000 per year to the widow, or the erection of a family mausoleum, or distribution of stocks or bonds to the children, or to the payment of the bequests to the grandchildren. The discretion of the executor (item 10) was to be exercised in the final settlement of the estate and in the division between the children of real property or the sale thereof, "so that my children shall and will fare equally at all times during and in the final distribution of my said estate". The accounts filed by the executor show that distribution of the corpus of the estate has been made to the children from time to time; and the bequest in trust, for the purpose of maintaining a lot in the Plum Creek Cemetery, ordered "before final distribution of my estate is made" in the same item 11 which contains the bequests to the grandchildren, "before final distribution of my estate is made", was paid as early as April 20, 1923.

There is another compelling reason why the bequests to the grandchildren should be paid upon their arriving respectively at the age of 21 years. Following these bequests in item 11, the testator directs that the balance over of his estate shall be paid to and be equally divided between his said children. Had no funds come into the hands of the executor to pay the specific bequests to the grandchildren, it might be urged that in the exercise of his discretion the executor would not be required to make a disadvantageous sale of real property to pay the bequests. But, instead of paying the bequests to the grandchildren, the executor has distributed moneys to the testator's children, the residuary legatees. It is well settled that the pecuniary bequests to the grandchildren are preferred by law over bequests to the remaindermen.

For the reasons hereinabove discussed, we conclude that the executor had no power to exercise his discretion in postponing payment of specific bequests to the grandchildren; the intention of the testator, as expressed in plain language, was that the grandchildren's bequests should be paid upon their arriving respectively at the age of 21 years.

In view of the well-considered opinion in Vogt's Estate, 297 Pa. 92, the question of interest on the grandchildren's bequests was not seriously pressed at argument. The rule laid down in that case resolves the issue raised as to the interest. The bequests bear interest from the date of the death of the decedent.

And now, February 26, 1934, the exceptions to the report of the auditor are sustained; and it is herewith decreed that the bequests to the testator's grandchildren under item 11 of the will are payable at and upon their arriving respectively at the age of 21 years, with interest from the date of the death of the testator, and that the bequest to the deceased grandchild, Henry Zaring, shall be paid in equal shares to the sisters of the said Henry Zaring, or the survivor of them, their heirs or assigns, with interest from the date of the death of the testator.                     From R. H. Klein, Sunbury, Pa.