Commonwealth, to use, *v.* Henry W. Horst
Company et al., Appellants.

Argued January 13, 1950. Before MAXEY, C. J.,
DREW, LINN, STERN, STEARNE and JONES, JJ.

*Edward Paul Smith,* with him *Albert Smith Faught,*
for appellants.

*Walter B. Gibbons,* for appellees.

OPINION BY Mr. Justice DREW, March 20, 1950:

This action in assumpsit was brought in the name of the Commonwealth to the use of Joseph Herzog, a partnership, against Henry W. Horst Company, a construction engineering firm employed by the Commonwealth, and its surety, the Maryland Casualty Company, to recover $7,642.60 due under an excavation and hauling contract. Defendants answered and by way of counterclaim averred that a material change had occurred when the excavation operations were shifted from one site to another and, by the terms of the contract, this necessitated a readjustment of the amount due. The jury returned a verdict for plaintiff, but only for $5000. The learned court below granted plaintiff's motion for a judgment n. o. v. From this judgment and the judgment overruling its motion for a new trial, defendants have appealed.

Defendant, Henry W. Horst Company, is an Illinois corporation registered to do business in Pennsylvania. On August 15, 1946, the Commonwealth of Pennsylvania contracted with that company for the improvement of a certain highway and bridge in Tinicum Township, Delaware County, Pennsylvania, on route 762. A joint and several bond for the payment of any labor and materials to be supplied under the contract was executed the same day between Horst and the Maryland Casualty Company. Horst Company then entered into a written subcontract on August 26, 1946, with plaintiff whereby plaintiff was to excavate dirt from a lot designated by defendant and transport it to the construction site.

Plaintiff began the work of excavation under the direction of defendant on a plot of ground later designated Pit No. 1. This ground was bounded on the northwest by South MacDade Boulevard, on the southeast by West Knowles Avenue and on the northeast by tracks of the B. & O. Railroad. However, within a few days an injunction was issued restraining further excavation and

by oral agreement operations were shifted to a section later known as Pit No. 2. This plot was directly opposite the West Knowles Avenue boundary of Pit No. 1 but was separated from it by a swamp which was approximately two hundred and fifty feet in depth. The marsh could not support a road, and ingress to Pit No. 2 had to be made via South Avenue, the southern boundary of that lot. This street was approximately four tenths of a mile nearer the construction site than was the entrance to Pit No. 1. Although this lessened to some extent the distance plaintiff's trucks had to travel, defendant continued to pay plaintiff at periodic intervals without complaint or discussion of a possible lowering of the unit contract price. But, when all the work had been completed and defendant had been paid in full by the Commonwealth, it demanded an adjustment of the unit yardage basis established by the contract and refused to pay plaintiff until it agreed to such an adjustment. Upon plaintiff's refusal of that demand, defendant withheld the remaining money due under the contract.

Section (a) of Article VII of the contract provides: "The Contractor may by a written order change the extent or amount of the work covered by this subcontract. If any such change causes a material increase or decrease in the amount or character of such work, an equitable adjustment shall be made, and this subcontract shall be modified in writing accordingly." Defendant contends that such a decrease did take place when plaintiff's hauling distance was shortened by the shifting of excavation operations to Pit No. 2 and argues that the contract entitled defendant to an appropriate adjustment of the cost basis. Obviously this argument can be sustained only if the area to be excavated, as described in the contract, did not include Pit No. 2.

It is a settled rule that where a contract contains no words pertaining to an art or trade, is written in plain and popular language, and the facts and circum-

stances attending its execution and delivery are wholly undisputed, the interpretation thereof is for the court, and not for the jury: *Shafer v. Senseman,* 125 Pa. 310, 17 A. 350; *Baldwin v. Magen,* 279 Pa. 302, 123 A. 815. Article I, which contains the language pertinent to the issue here involved, provides the borrowed fill will be taken from property furnished by defendant "located S. E. of S. MacDade Boulevard near W. Knowles Avenue." Although this language is broad, that fact alone does not make its interpretation a question for the jury. The words used form a commonplace method of description and convey a clear understanding of what land was intended to be included therein. The interpretation of this phrase is therefore, under the above rules of construction, a matter for the court.

Pits Nos. 1 and 2 are both in the general area described by defendant. Pit No. 1 is on the north side of West Knowles Avenue and Pit No. 2 is several hundred feet to the south. In determining whether, as a matter of law, the parties intended to include this latter plot of ground we look to what they have clearly expressed, for the law does not assume the language of the contract was chosen carelessly: *Moore (et ux) v. Stevens Coal Co.,* 315 Pa. 564, 568, 173 A. 661. Furthermore, this contract was prepared by defendant and in the event of doubt, a writing will be construed against the party who has drawn it: *Monessen Bank Mortgage Pool Case,* 350 Pa. 125, 38 A. 2d 15; *Wiegand v. Wiegand,* 349 Pa. 517, 37 A. 2d 492; *Strafford Publishing Co. v. Stetson & Co.,* 41 Pa. Superior Ct. 560, 564. The contract provided that the fill would be taken from property "furnished" by defendant which would be "near W. Knowles Avenue." By using these words of description, defendant clearly did not intend to designate any particular lot as the point of excavation but rather to describe a general area in the vicinity of West Knowles Avenue and South MacDade Boulevard from which a site would be

selected. The lot, upon which the excavation of Pit No. 2 took place, was only a few hundred feet from West Knowles Avenue and was well within the area described in the contract. That defendant conceived it so to be is demonstrated by its practice of paying plaintiff at the unit price stipulated in the contract during an extended period of time following the transfer of operations to Pit No. 2. Not until after the Commonwealth had made final payment to defendant did it discuss with plaintiff the possibility of an adjustment under Article VII. In addition, in that article, the contract provides that where a material change is made the contract shall be modified in writing accordingly. If defendant had believed the substitution of Pit No. 2 amounted to such a change it was obliged under the terms of the contract to acknowledge the importance of this change by a written authorization and by negotiating for an appropriate adjustment in the unit price. That it did not do so is evidence that defendant deliberately chose indefinite boundaries in describing the land to be excavated so that it might justify the use of either or both lots as circumstances would require. ". . . when we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it, as evidenced by their course of dealing under it." *Peoples N. Gas Co. v. Wire Co.*, 155 Pa. 22, 25, 25 A. 749. The express language of the contract and its interpretation by the parties as manifested by their actions make it clear that the substitution of Pit No. 2 did not constitute a material change.

Plaintiff was entitled to a directed verdict for the total sum due under the terms of the contract. Since the verdict of the jury in his favor was for a lesser sum, a judgment n. o. v. was properly entered for him: *Schwarz v. Bank of Pgh. Natl. Assn*, 283 Pa. 200, 129 A. 52.

Judgment affirmed.