**PITTSBURGH RAILWAYS COMPANY, a Pennsylvania corporation, Appellant,**

v.

**THE EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, a New York corporation.**

**No. 13311.**

United States Court of Appeals Third Circuit.

Argued March 10, 1961.

Decided April 3, 1961.

Clyde A. Armstrong, Pittsburgh, Pa., (Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellant.

David B. Buerger, Pittsburgh, Pa., (Donald L. McCaskey, William Y. Rodewald, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and FORMAN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a summary judgment entered for the defendant in a contract case. The parties are in federal court by reason of diversity only; the plaintiff is a Pennsylvania corporation and the defendant a New York corporation. The trial judge, in an opinion which carefully analyzed the transactions between the parties, found as a fact that there was "no genuine issue as to any material facts" and, therefore, entered summary judgment.

It should be added, also, that the plaintiff in his brief concedes that " * * * there is no dispute as to the facts and circumstances before the lower court and before this court on appeal."

The controversy arose out of improvements being made in the "point" area in the City of Pittsburgh. The defendant, The Equitable Life Assurance Society of

the United States (Equitable), financed the erection of three large buildings in this part of the redevelopment of the area. Equitable entered into an agreement with the Urban Redevelopment Authority in which one of the conditions was that Equitable would arrange with the appropriate public utility companies for the reconstruction of all facilities within the project. This affected the plaintiff, Pittsburgh Railways Company (Railways), in two particulars. It was necessary back in 1950 to remove tracks and provide a temporary facility for the trolley course which ran across the area in which the new buildings were to be erected. This was arranged by an agreement whereby temporary facilities were installed on nearby private property. Following that a new permanent loop arrangement had to be effected. The dispute in the district court and before us was between Railways and Equitable as to who would bear the cost of the permanent arrangement.

On June 21, 1950, there was a conference at which Mr. Weins, Executive Vice President of Equitable, told the conferees who were representatives of various utility companies operating in the area that Equitable did not acknowledge any legal responsibility but offered to share part of the cost. On July 3, 1950, Mr. C. D. Palmer, then "Commercial Manager," later President of Railways, wrote a letter to Mr. Weins telling him that they had been advised by counsel that Equitable should bear all the costs, both the temporary and permanent facilities. He followed this up with another letter on July 10, 1950, giving Mr. Weins an estimate of the cost. Equitable did not answer either of these letters.

The next step, and this is the vital one, was taken in a letter written by Mr. Palmer, again to Mr. Weins, on July 19, 1950. He told Equitable that it was expected to reimburse Railways for the installation and removal of the temporary facilities. Then he said, speaking for the trustees of Railways, that "The Trustees are willing to postpone a determination of the costs that should be borne by Equitable for the permanent facilities * * * until such time as ultimate decision is made as to the form of transit service in this area * * *" Then he added, "with the understanding that the postponement of the consideration of this question will be without prejudice to the rights of the Trustees or their successor or successors when the question of the allocation of these costs is ultimately taken up for consideration and determination." To this Equitable replied by telegram saying, "Proposal submitted in your letter of July 19 concerning costs of changes in tracks is accepted."

Out of these three letters Railways claims that Equitable became liable for the cost of both the temporary and permanent transportation arrangements. It says that the postponement only had to do with the ultimate ascertainment of the cost of the permanent construction. The temporary part of the business between the parties is out of the case. Equitable has paid all the expenses with regard to it.

It is quite clear to us that the district court was right and that Railways is wrong. The letter of July 19th, to us, is quite clear that there was an out-and-out demand for payment of the temporary facilities and a postponement of the question of permanent facilities. The letter did not say, as did the letter of July 3rd, that Equitable is to pay all the cost of the permanent facilities. Instead, it said that Railways is willing to postpone the determination of the costs that "should be borne." In other words, this subject of costs had been dickered about beginning with the June 21st meeting. Equitable had made an offer which Railways refused. The matter of the temporary facilities had to be settled right away. Equitable did settle by its acceptance and has since paid the costs. What the trustees were doing in this letter of July 19th was trying to get the temporary matter settled forthwith and to postpone the larger matter until later. This is, we say, the proper interpretation of what the parties did.

■ It is well settled, as the district court points out, that the practical interpretation of an agreement by the parties is helpful in determining what they meant by their agreement. Fox v. Johnson & Wimsatt, 1942, 75 U.S.App.D.C. 211, 127 F.2d 729; Commonwealth to Use of Herzog v. Henry W. Horst Co., 1950, 364 Pa. 403, 72 A.2d 131. What Mr. Palmer thought Equitable had committed itself to is shown pretty clearly in the minutes of the meeting of his board of directors on February 28, 1951. The minutes say that Mr. Palmer reported to his board that while Equitable "had agreed to pay the cost of the temporary relocation of * * * facilities * * * the Company had no assurance that Equitable would assume all or any part of the cost of the permanent relocation of street railway facilities." The directors, by resolution, told the officers to take such steps as they thought necessary to have the cost of the permanent facilities paid by Equitable. Following this Mr. Palmer wrote Mr. Weins in April of 1951 asking for "prompt agreement in relation to this matter," the matter being the permanent facilities. Again on July 31, 1952, Mr. Palmer wrote Mr. Weins that "in view of the period of time during which the matter of the proper allocation of costs between your Company and this Company has been under consideration" he would like to review the entire question at an early date.

■ All of this shows what is already set out; that the matter of payment of expenses for the permanent work was unsettled and Mr. Palmer is recognizing this fact two years after Railways now claims Equitable assumed responsibility for it.

■ The district judge was clearly right in entering summary judgment. The conclusion from the letters is to us unmistakable. It is backed up by the subsequent statement of Mr. Palmer to his directors and his further letters to Mr. Weins. There is nothing on which a jury could be allowed to speculate as to the meaning of the parties. It should be kept in mind, too, that the construction of documents and other writings has from time beyond which the memory of man runneth not to the contrary been a matter for the judge. Wigmore, Evidence, § 2556 (3d ed. 1940); Williston, Contracts, § 616 (rev. ed. 1936); Corbin, Contracts, § 554 (1960); Daniels Co., Contractors, Inc. v. Nevling, 1956, 385 Pa. 276, 122 A.2d 814.

The judgment of the district court will be affirmed.