**NASSIF et al. v. UNITED STATES, for Use of BAYER & MINGOLLA CONST. CO., Inc.**

**No. 4538.**

United States Court of Appeals. First Circuit.

March 23, 1951.

---

James Charles Roy, Boston, Mass. (Poland & Davis, Boston, Mass., on brief), for appellants.

Francis D. Branca, Boston, Mass. (Frank Mulready, Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and CLIFFORD, District Judge.

WOODBURY, Circuit Judge.

David Nassif, doing business as David Nassif Company, entered into a written contract with the United States to furnish labor and materials, and to perform certain work, in connection with the development and enlargement of an existing military airfield in Bedford, Massachusetts. Under the terms of the contract he as principal, and the defendant, Century Indemnity Company, as surety, executed and delivered to the United States a bond under which each was bound to make prompt payment to all persons supplying labor or materials in the prosecution of the work called for in the contract. Subsequently Nassif entered into a contract with the plaintiff-appellee, Bayer & Mingolla Construction Company, Inc., hereinafter referred to as the Company, under which the latter agreed to complete the work on the airfield which Nassif had already begun in accordance with Nassif's prime contract with the United States.

In addition to the work called for in the original contract between the United States

and Nassif, certain other work and materials were ordered from time to time by the United States through the Army Engineers as the work progressed. These additional items of labor and materials were performed and furnished by the Company under "change orders" negotiated between representatives of the United States and Nassif and agreed to by representatives of the Company. The instant litigation has to do with some of these latter items; it being the Company's contention that although it supplied all the items called for in "change orders", it has not been paid for all of them by Nassif.

The present suit was duly instituted under § 2 of the Act of Congress of August 24, 1935, 49 Stat. 794, 40 U.S.C.A. § 270b. We are therefore not concerned with any question of the diversity of the citizenship of the parties or with the amount in controversy. Our appellate jurisdiction under Title 28 U.S.C.A. § 1291 is clear.

After issue had been joined in the court below the plaintiff company moved for reference to a master. The motion was granted and a master appointed, who heard the parties at length and filed a detailed report which concluded with a finding that the defendants were severally liable to the plaintiff in the amount of $24,997.19 with interest thereon. The parties then filed a stipulation in the court below waiving trial by jury and, although reserving the right to introduce further relevant testimony, agreeing that the master's report should be given the same "force, effect and evidential value as if it had been offered in a trial before a jury". Furthermore the parties agreed that the decision of the court below should not be accompanied by a written opinion unless the court in its discretion should think otherwise. No opinion was filed.

The court below held hearings at which evidence was introduced and arguments were made and took the case under advisement. It found the plaintiff entitled to recover $35,675.30 from the defendant, nearly $11,000 more than the master had found due, and entered judgment for the plaintiff in accordance with its finding,

with interest and costs. The defendants thereupon took this appeal.

On this appeal it is contended that the court below erred in increasing the amount which the master found to be due the plaintiff. Thus the dispute is narrowed down to only two items. One is for regrading and reseeding 14.5 acres of land, and the other is for digging 16,143 linear feet of taxiway gutters and ditches.

Little needs to be said with respect to the item for regrading and reseeding. There is no doubt that this work was done as an "extra", i. e. that it was work not called for in the original contract between the United States and Nassif, that it was ordered as such by the Army Engineers as provided in the above contract, that it was covered in a duly executed "change order", and that the plaintiff company actually did the work. The only dispute with respect to this item is as to price.

On conflicting evidence the master found the fair value of this work to be $342.50 per acre, or $4,966.25. The court, however, rejecting evidence the master had found persuasive and believing the testimony of the Army Engineer in charge of the work, which the master had rejected, found $500 per acre to be a fair price for the work. It therefore awarded the plaintiff a total of $7,250 for this item; $2.283.-75 more than the master had found due. The fair value, and hence the price to be paid for the work, is a pure question of fact and the evidence bearing thereon is conflicting. There being ample testimonial basis in the record for the conclusion reached by the court below its finding is not to be disturbed on appeal under principles too familiar to require any citation other than Rule 52(a), Fed.Rules Civ. Proc., 28 U.S.C.A. Moreover, $500 per acre was the original price agreed upon between the United States and Nassif in the "change order" covering the work; it was the price subsequently agreed upon between Nassif himself and the plaintiff's general superintendent when the latter agreed on behalf of the plaintiff to do the work, and it would appear that it was also the price which the United States paid Nassif for it.

The item for digging taxiway gutters and ditches calls for slightly more extended consideration. Here again it is not disputed that the work was an extra not called for in the specifications of the original contract, that it was ordered by the Army Engineers and covered by a duly agreed upon and executed "change order", and that the plaintiff company actually did the work. The question is whether the work belongs in the category of "common excavation" which was to be paid for under the terms of the original contract at an agreed unit price per cubic yard and as such had been included in a larger general item of "common excavation" for which the plaintiff had been paid by Nassif, or whether, on the other hand, it was a special sort of excavation requiring a substantial amount of hand labor the fair and reasonable value of which amounted to $8,394.36, for which the plaintiff has not been paid. The master found that the work had been charged to the defendant by the plaintiff as "common excavation", and that the defendant had paid the plaintiff for it on that basis at the agreed unit price per cubic yard. He therefore awarded the plaintiff nothing on this item.

The court, however, took a different view. Apparently, although without a memorandum opinion we do not know, it regarded the work as a special sort of excavation, which had not been included in the general item of "common excavation" for which the plaintiff had been paid, for it awarded the plaintiff $8,394.36 for the item, that being the lump sum agreed upon for the work in the "change order" covering it.

The evidence introduced before the master is not before us. We therefore do not know the evidentiary basis for his conclusion that the plaintiff company's engineer included the work done in digging extra taxiway gutters and ditches in his computation of extra "common excavation" and billed it as such to the defendant, Nassif, at the unit price per cubic yard agreed upon for such work in the latter's contract with the United States. The evidence in addition to the master's report introduced before the court, however, which is before us, casts some doubt upon the master's conclusion in that it nowhere appears therein that the number of cubic yards excavated in the course of digging the extra sixteen thousand odd linear feet of gutters and ditches involved was ever calculated by anyone. Moreover there is ample evidence that digging these gutters and ditches required a great deal more hand work than "common excavation". Furthermore it hardly lies in the defendant Nassif's mouth to say, as he did in his testimony before the court, that although as between himself and the United States he regarded the work as an extra to be done at the lump sum price of $8,394.36 as evidenced by the "change order", nevertheless as between himself and the plaintiff company he regarded the work as only "common excavation" to be done at the unit price agreed upon for such work in his original contract with the United States.

However, we see no occasion to press the point further because the defendants' argument with respect to this item is not so much that the evidence does not support the court's conclusion, as that the court's conclusion rests upon an erroneous interpretation of the contract between Nassif and the United States.

In that contract a unit price per cubic yard was agreed upon for "common excavation" and a slightly higher unit price per cubic yard was agreed upon for ditch excavation. And by that contract's terms excavation for "gutters" was to be paid for as "common excavation" and payment for all excavation required for drainage ditches was to be made at the contract unit price for ditch excavation. Therefore it is said that since the Company agreed to complete Nassif's work according to the specifications of his contract with the United States, the Company was obligated to do the work included in this item either as common or else as ditch excavation for the unit prices specified in the contract for such work, without regard to the special arrangement made therefor in the change order negotiated between Nassif and the United States.

The answer to this argument is to be found in the testimony that the gutters

and drainage ditches included in this item were not ordinary gutters and drainage ditches, but special ones necessitated by peculiarities of the terrain requiring substantially more hand labor than common excavation or ordinary ditch excavation. And moreover Nassif and the United States in their dealings with one another obviously treated the extra gutters and ditches involved as extraordinary for the change order covering them is couched in terms of linear feet and provides a lump sum price of $8,394.36 for the job, instead of in terms of cubic yards at one or the other of the unit prices per cubic yard specified in the contract for either common or drainage ditch excavation. Apparently therefore the United States and the parties to this litigation as well, for the Company's representative agreed to the change order covering this work, interpreted the contract at the time as not establishing a unit price per cubic yard for the work. Instead it is evident that they must have regarded the work as of a special and peculiar sort for which payment in a lump sum was more appropriate than payment per cubic yard, or even per linear foot. The court below evidently adopted the practical interpretation put upon the contract by the parties to it instead of a strictly literal interpretation of its terms at variance with its practical application by those who had entered into it. This clearly was not error.

A further argument bearing upon both items remains for consideration. In both instances the court awarded the plaintiff the amount specified in the "change order" for the work involved. This it is contended was error for the reason that the parties had definitely agreed that change order figures were not to be used in figuring the plaintiff's compensation for extra work, but that it was to be compensated therefor on a *quantum meruit* basis. This it is said necessarily follows from the fact that they struck out an article in the draft of their contract before they signed it to the effect that "The Corporation * shall be entitled also to ninety-five (95) percent of all extra payments or compensation received by Nassif from the United States Government as to any of the aforesaid work, labor and materials." The answer to this argument is that although the court gave the plaintiff the prices for the items specified in the change orders, it did not give them to the plaintiff because they were there specified. It gave them to the plaintiff because on ample evidence it found that those prices were fair and reasonable for the work.

The judgment of the District Court is affirmed.

---

* Bayer & Mingolla Construction Company, Inc.