PITTSBURGH RAILWAYS COMPANY, a Pennsylvania corporation, Plaintiff,

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, a New York corporation, Defendant.

Civ. A. No. 14703.

United States District Court
W. D. Pennsylvania.
May 26, 1960.

V. W. Thomas, E. B. Wolfe, and Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

Buchanan, Ingersoll, Rodewald, Kyle and Buerger, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This civil action came before me in the routine of pre-trial of civil jury cases. The jurisdiction is diversity of citizenship. Plaintiff is a public utility corporation existing under the laws of Pennsylvania, with its principal place of business in Pittsburgh in this judicial district. Defendant is a New York Corporation with its principal place of business in the City and State of New York, but it also does business in this district. Plaintiff is the franchise owner and operator of the public transportation system in the City of Pittsburgh. This case concerns the cost of the permanent relocation of that part of the system in certain Pittsburgh streets now known as the Point Area. The claim is for some $51,885.12 which plaintiff says is the actual cost less credits which it spent in the construction of the new and permanent facilities in and about the point area made necessary by reason of the redevelopment of the area by defendant.

At the pre-trial conference, I reached the tentative conclusion that there was no genuine issue as to any of the material facts. It was therefore suggested to counsel for the defendant that he file a motion for summary judgment under Fed.Rules Civ.Proc. Rule 56, 28 U.S.C.A. Such a motion was later filed. It is presently before me for decision. Counsel have been heard at oral argument and their briefs have been duly considered. At the outset this court has in mind that in deciding a motion for summary judgment factual issues are not to be decided but the inquiry rather is as to whether a dispute exists as to any material fact.

Before pre-trial, in accordance with our local rules, each side filed pre-trial narrative statements of the issues. Counsel agreed to and filed before pre-trial, a stipulation of facts comprising some twenty-two paragraphs. The stipulation referred to and counsel agreed on the admission in evidence of documents and other facts, none of which are in dispute. Based upon the whole record, including the pleadings, the written stipulation of facts, the pre-trial narrative statements and all exhibits, my original tentative decision has been strengthened and fortified, with the result that this court finds that there is no genuine issue as to any material facts in this case, and that defendant, as a matter of law, is entitled to judgment.

It is believed that a brief review of the essential facts demonstrates that this civil action is one to be decided under Rule 56. In the first place there are no oral statements in dispute. The background events are not in dispute. The documents, in the light of the undisputed facts speak for themselves. The area involved is the point of confluence of the Allegheny and Ohio Rivers. The Urban Redevelopment Authority of Pittsburgh is an authority established under the Urban Redevelopment Law of Pennsylvania. The Authority, on February 14, 1950, entered into a contract with the defendant, that is Equitable, for the redevelopment of the Point Area involved here, known as Redevelopment Area No. 1, which includes the streets mentioned in the letters exchanged between these parties. In that contract Equitable, as the Redeveloper, agreed to arrange with appropriate public utility companies, without expense to the city or the authority—

"* * * for the location, relocation, construction and reconstruction of all facilities maintained by such utility companies within the Project Area and without said Area to the extent made necessary by the construction to be undertaken by the Re-

developer in the Project Area. * * * "

In plaintiff's pre-trial narrative, plaintiff's counsel says:

" * * * A series of conferences between representatives of the Trustees of Pittsburgh Railways Company, the Urban Redevelopment Authority of Pittsburgh, the defendant, and others was held during the months of April, May and June, 1950, in regard to the changes which were to be made in the streets of the redevelopment area and the relocation and reconstruction of plaintiff's facilities in the area. At one of such conferences on June 21, 1950, the defendant through its executive vice president, Mr. R. H. Weins, orally proposed that the cost of rearranging the facilities of the affected utilities be shared equally between the utilities and the defendant. * * * "

Defendant concedes that the foregoing is a correct summary of the various conferences and negotiations leading up to the June 21, 1950 conference and that at that conference, Equitable, through R. H. Weins, its vice president, orally proposed that it would pay one-half the expense of relocating permanent facilities then under consideration in the area. It is important to note at this point that both parties agree that the foregoing was defendant's proposal made at the June 21, 1950 conference. It is equally important to note also that up to the date of this conference there was no agreement whatsoever that defendant would pay plaintiff for its cost in relocation of the street railway tracks or other facilities. All that defendant had theretofore agreed to, was to save the City and Authority harmless from any such expense.

Both parties, of course, look at the same background events. Plaintiff, however, says that the three letters and the telegram, to be mentioned, read in the light of the background events, bound defendant for the payment of all the costs of the permanent relocation. Defendant, on the other hand, says that the same documents relied upon by plaintiff show that defendant agreed only to pay the costs of the temporary facilities, which it has paid, and that there was never at any time an assent on the part of the defendant to pay any portion of the permanent relocation and construction costs. This court has looked upon the same background of facts, none of which are in dispute and the letters of Mr. C. D. Palmer of July 3rd, 10th and 19th, 1950, and the telegram from defendant dated July 24, 1950, and agrees with the defendant that they do not create any liability against defendant. Both sides agree that if defendant is held liable, its liability is based upon the telegram. The telegram was sent by Equitable after three letters had been received from plaintiff. Plaintiff's letter of July 3, 1950 written by Mr. Palmer, exhibit A, flatly rejects the oral proposal made by Mr. Weins of Equitable at the conference on June 21, 1950. His language is, " * * * The trustees cannot accede to this proposal. * * * " His reason is that counsel have advised him that the plaintiff may not accept such a proposal as made by defendant. Mr. Palmer indicates that he expects Equitable to pay the whole costs including the temporary and permanent relocation of tracks. The letter of July 3, 1950, was unanswered by defendant. On July 10, 1950, Mr. Palmer wrote another letter. He had a breakdown of the costs to be borne by Equitable. The last paragraph of the July 10 letter suggests,

" * * * the matter should be brought to a prompt conclusion if we are to have the temporary loop facilities available for operation on August 1. * * * "

This letter also was unanswered by Equitable. On July 19, 1950, Mr. Palmer wrote the third letter to Equitable. In this letter Mr. Palmer made a proposal. On July 24, 1950, defendant sent the telegram to Mr. Palmer, reading:

" * * * Proposal Submitted in Your Letter of July 19 Concerning Costs of Changes in Tracks Is Accepted * * * "

Plaintiff contends that the telegram language " * * * costs of changes in tracks is accepted * * * must be construed to mean all the cost or expense in all changes in tracks, both temporary and permanent. From this construction plaintiff will have the court conclude that the defendant's telegram acceptance is an agreement by defendant to pay for the permanent relocation and construction.

An analysis of the July 19th letter, however, requires a construction contrary to plaintiff's contention. In his letter, Mr. Palmer first referred to his July 3rd letter relating to costs of the changes in the tracks. He then stated what plaintiff expected of the defendant. The first item was that defendant reimburse plaintiff for,

> " * * * the cost of the temporary loop track and appurtenant facilities to be constructed pursuant to easements granted by the Blaw Knox Steel Company and your company, and when the use of these temporary loop facilities is completed, your company would be charged with the cost of removal of the temporary facilities and would be credited with the salvage or scrap value of the property removed. * * * "

The defendant contends that this paragraph in the letter made a proposal suggesting that defendant pay for the costs of the temporary loop track; that the telegram accepted that proposal; and it is, of course, agreed that defendant has paid the charges therefor. It is the third paragraph of the July 19th letter, says the plaintiff, in view of the background and the telegram, that binds the defendant to pay the cost of the construction of the permanent facilities. But as the court reads this letter, the third paragraph states, and all its purposes, is that the plaintiff was willing to postpone a determination of the costs that should be borne by Equitable,

> " * * * until such time as an ultimate decision is made as to the form of the transit service in this area—with the understanding that

the postponement of the consideration of this question will be without prejudice to the rights of the Trustees * * * when the question of the allocation of these costs is ultimately taken up for consideration and determination. * * * "

The court agrees with defendant's counsel's interpretation of the construction of the letter of July 19th. All it does is suggest that the unsettled matters between the parties be deferred. Mr. Palmer is careful to say that his suggestion is " * * * without prejudice * * * " which indicates that he does not want to be precluded from raising the matter in the future. He speaks of the future time as " * * * when the question of the allocation of these costs is ultimately taken up for consideration and determination. * * * " Such language points to lack of agreement rather than assent.

■ In interpretation and construction of contracts, contemporaneous construction placed upon a document by the parties is always relevant and is often controlling. Again the court must agree with defendant's counsel when he says that defendant has not agreed to pay the costs of the permanent relocation by the telegram, but that if any stronger evidence is necessary, then the minutes of a Board Meeting of the plaintiff fortifies defendant's position. Defendant's exhibit 23 is an extract from the minutes of a meeting of the Board of Directors of the Pittsburgh Railways Company held on February 28, 1951. The minutes refer to a statement by Mr. Palmer, which of course plaintiffs admit, relating to the subject matter of this law suit. In part these minutes say:

> " * * * He stated further that while Equitable Life Assurance Society had agreed to pay the cost of the temporary relocation of street railway facilities necessitated by the development, the Company had no assurance that Equitable would assume all or any part of the cost of the permanent relocation of street railway facilities. * * * "

The minutes show that the Board authorized the expenditures necessary to cover the costs of the permanent relocation of the street railway facilities necessitated by the development of the point area and that officers were authorized and directed to take steps as may be deemed appropriate to have the costs of such relocation paid for by Equitable. The crux of the matter is that some seven months after the telegram was sent, Mr. Palmer told his board that he had no agreement with Equitable to pay for permanent facilities.

In the whole transaction and series of events, this court cannot find any evidence which binds Equitable to pay plaintiff's claim. No credibility of any witnesses is involved in this decision nor is any oral testimony to be evaluated. It seems unnecessary to cite any authorities. An analysis of the facts simply show a want of any assent by Equitable to pay any money. It offered to pay one-half and plaintiff refused that offer. Plaintiff claims an express contract exists in the evidence. I can find none.