UNITED STATES of America, to the Use of Louis J. VIGLIONE and Anthony Viglione, trading as Viglione Gradall Rental, Plaintiff,

v.

KLEFSTAD ENGINEERING COMPANY, Inc. and Blackhawk Heating & Plumbing Company, Inc. and Aetna Insurance Company, Defendants.

Civ. A. No. 68–277.

United States District Court,
W. D. Pennsylvania.

March 26, 1971.

Robert L. Campbell, Plowman & Spiegel, Pittsburgh, Pa., for plaintiff.

Robert L. Frantz, Pittsburgh, Pa., for defendants.

## FINDINGS AND OPINION

GERALD J. WEBER, District Judge.

This is an action brought in this court under the Miller Act, 40 U.S.C.A. § 270a.

The use-plaintiff here is an excavation sub-contractor who undertook work for the defendant prime contractor.[1] The defendant prime contractor was engaged in performing a construction contract for the United States. The sub-contract between plaintiff and defendant incorporated in it terms and conditions of the principal contract, including the provision that sub-contractor assumes toward the contractor the obligations that contractor assumes toward the owner relating to the work. Further the sub-contract provided that any claims for extra shall be made by the sub-contractor to the contractor in the same manner required by the principal contract for claims against the owner.

Plaintiff's contract was to excavate rock estimated by the United States engineer at 110 cubic yards for a price of $14,800. This price was to be adjusted up or down depending on whether more or less than 110 cubic yards was excavated.

The defendant's contract with the United States required that when payment for rock excavation was claimed by the defendant, the defendant was required to have the material exposed and uncovered and to notify the Government's Resident Engineer before proceeding, so that accurate measurements could be made. It was the duty of the defendant under his contract with the Government to hire and pay for the services of a Registered Professional Engineer or Registered Surveyor who would make a computation and certification of quantities for submission to the Government for payment.

Under the practice employed between plaintiff and defendant in carrying out

---

1. We will use the term "defendant" here to refer to the defendants' joint ventures and their surety.

this sub-contract in accordance with instructions from defendant's superintendent, the plaintiff notified defendant when plaintiff came upon rock excavation for which a claim for payment would be made. Upon such notice the defendant prime contractor then sent its own Registered Surveyor to make the necessary measurements. This was done in this case. Under the procedure agreed upon, defendant would then notify plaintiff of the quantities so measured so that plaintiff could bill defendant for the amount so excavated. This was never done because the records were destroyed. This same certification was the basis upon which defendant would make its claim for payment to the Government.

The defendant's Registered Surveyor hired for this purpose was Mr. Aires. Upon plaintiff's requests he came to the excavation site and made the necessary measurements and computations. Mr. Aires was hired and paid by defendant and was defendant's agent under defendant's prime contract with the Government.

Before Mr. Aires could make the computations of quantities and transmit them to plaintiff his records were destroyed by fire. Without these measurements the Government has refused payment to defendant. Defendant refuses to pay plaintiff for the amount of excavation claimed by plaintiff under the proofs that plaintiff is able to submit for the reason that plaintiff cannot submit it to the computation and certification of quantities by a Registered Surveyor under the same terms and conditions required of defendant in submitting such claim to the Government.

Defendant relies on the language of the sub-contract that plaintiff sub-contractor assumes the same duties to defendant prime contractor as the prime contractor assumed to the owner, the United States.

We do not read the prime contract between defendant and the Government as allowing the defendant to pass on or sublet the duty of defendant to hire a Registered Surveyor to compute and certify quantities of excavation for payment. The contract requires the defendant to do this as a condition of payment by the Government. The defendant in turn under the sub-contract could require the plaintiff, its sub-contractor, to provide the same type of proof in support of its excavation claim, but in actual practice the parties in carrying out the sub-contract relied upon the measurements and certification to be made by defendant's Registered Surveyor.

■ We find that there is an ambiguity between the terms of the general contract between defendant and the Government, which places the responsibility for measurement and certification upon the Registered Surveyor hired by defendant, and the terms of the sub-contract which requires the sub-contractor to satisfy the same requirements as are imposed on the general contractor. In the face of such ambiguity we may turn to the practice of the parties in carrying out the sub-contract as the best guide to the intention of the parties. Aetna Casualty & Surety Co. v. United States, 365 F.2d 997 [8th Cir., 1966]; Nassif et al. v. United States, 187 F.2d 794 [1st Cir., 1951]; Pittsburgh Railways Co. v. Equitable Life Assurance Society, 198 F.Supp. 602 [W.D.Pa., 1960], affd. 288 F.2d 640 [3rd Cir.].

■ A clause in a sub-contract incorporating the prime contract into it, does not require the sub-contractor to act in place of the contractor in all areas. The Government does not recognize or deal with the sub-contractor, and the sub-contractor is only required to perform its obligation to the prime contractor. United States for Use of B's Co. v. Cleveland Electric Co., 373 F.2d 585 [4th Cir., 1967]; John A. Johnson & Sons v. United States ex rel. Bal. Brick Co., 153 F.2d 534 [4th Cir., 1946]; Fanderlik-Locke Co. v. United States for the Use of Morgan, 285 F.2d 939 [10th Cir., 1960].

Plaintiff testified that the instructions to call upon defendant to do the survey work were received from Mr. Gordon Sutherland, defendant's super-

intendent on the job. Mr. Sutherland also instructed him to excavate all trenches to a five foot width despite the Government's limitations of paylines in the prime contract.

■■ It is clear here that both parties treated the sub-contract as not imposing upon plaintiff any separate obligation to make independent rock measurements. Defendant sent its own Registered Surveyor to make the measurements. This is a construction of the contract accepted by both the defendant and the plaintiff at the time. It was defendant who prepared the sub-contract. In case of any ambiguity as to its meaning the contract should receive the interpretation against the party who has drawn it. United States Aviation Underwriters Inc. v. WTAE Flying Club, 300 F.Supp. 341 [W.D.Pa., 1969].

■ Defendant's conduct in sending its Surveyor to make the measurements at the request of plaintiff also amounts to a subsequent oral modification or a waiver of the condition upon which defendant now relies. Even though a written contract provides that it can only be modified in writing it may be modified by subsequent oral agreement of the parties, or conduct which constitutes a waiver of the condition. Universal Builders, Inc. v. Moon Motor Lodge, Inc., 430 Pa. 550, 244 A.2d 10 [1968]. Where a party is aware that extra work is being done without proper authorization, yet he stands by without protest while the extra work is being incorporated into the project, there is an implied promise that he will pay for the extra work. Universal Builders, Inc. v. Moon Motor Lodge, Inc. supra. The evidence here shows that defendant recognized its obligation to supply plaintiff with the measurements by assurance that they would be supplied when received from the surveyor.

We, therefore, hold that it was not a condition of payment that plaintiff supply an independent certification of measurement. All that is required is that plaintiff supply adequate proof in support of his claim for the amount of rock excavated.

■ Defendant insists that its obligation to pay rests upon a condition that the amount excavated be certified by a Registered Surveyor. Following the practice adopted by the parties, plaintiff called upon the Registered Surveyor employed by the defendant under the provisions of defendant's prime contract with the United States. This surveyor made measurements, but because of a destruction of his records is now unable to certify all of the quantities. This should not defeat plaintiff's right to recover.

Restatement. *Contracts.*

Sec. 303 provides:

"Where a certificate of an architect, surveyor or engineer is a condition precedent to a duty of immediate payment for work, the condition is excused if the architect, surveyor or engineer

(a) dies or becomes incapacitated. * * * "

also

Restatement. *Contracts.*

Sec. 302 provides:

"A condition may be excused without other reason if its requirement

(a) will involve extreme forfeiture or penalty, and

(b) its existence or occurrence forms no essential part of the exchange for the promisor's performance."

■ This is particularly true where a clause is inserted in a contract for the purpose of furnishing evidence of performance rather than a condition of liability; the acts indicated by such clause need not be performed by the promisor in order to enforce the promisee's obligation. 17A C.J.S. Contracts § 456.

That this is the law in Pennsylvania is recognized in Fee v. Emporium Lumber Co., 50 Pa.Super. 557 [1912], where logs sold by plaintiff to defendant were to be weighed, scaled and marked before payment was due. After delivery, but be-

fore weighing, the logs burned. The court held:

"Where goods are sold and delivered to be paid for on the happening of a certain event, the vendor will not be deprived of his rights to recover merely because the event on which payment is to be made has, by accident, become impossible. Upon the same principle, when the quantity is to be ascertained by measurement at a particular time or place, or in a particular manner, if such measurement becomes impossible, nevertheless the quantity may be ascertained in some other manner. (pp. 567–568).

There is no dispute here that rock was not excavated. Defendant defends solely on the condition of measurement. This has become impossible. The plaintiff has supplied the best proof available as to the quantity.

Mr. Aires, the defendant's own Registered Surveyor was able to testify as to exact measurements of 244.26 cubic yards. Mr. Aires was also able to give reasonable estimates as to 452.5 cubic yards of additional excavation for a total of 696.76 cubic yards. Plaintiff's contract required him to excavate 110 yards and provided that he was to be paid $20 per cubic yard for such extra excavation or 586.76 cubic yards at a total cost of $11,735.20.

Plaintiff was entitled to payment of $14,800 for the original contract for 110 cubic yards. Upon this he has been paid $11,997.50, leaving a balance due of $2,-802.50.

In addition, plaintiff has established by the evidence two additional items for which payment is due, which are hereby allowed in the following amounts:

| | |
|---|---|
| Down time for Gradall and truck at Building 15 (T. p. 50), Exhibit 13 (T. pp. 105–107) | $400.00 |
| Highlift rental (T. p. 51) | 84.00 |

We, therefore, find defendant indebted to plaintiff in the following sums for work under the contract:

| | |
|---|---|
| Extra Rock Excavation | 11,735.20 |
| Balance of original contract price | 2,802.50 |
| Down time | 400.00 |
| Highlift rental | 84.00 |
| For a total of ........... | 15,021.70 |

with interest from May 15, 1967.

Defendant has filed a Counter-Claim for various items of work claimed to be the responsibility of plaintiff, which plaintiff did not do and which defendant had to do by its own forces or have done by others at its own expense. Also defendant counterclaims for certain items of repair of damages caused by plaintiff.

On a number of the items of defendant's counterclaim, the evidence is insufficient to satisfy defendant's burden of proof. Clear proof is lacking as to whether such work was the responsibility of plaintiff under the contract or whether plaintiff actually failed to do the work.

The Court finds that the following items of defendant's counterclaim were established by the evidence as due defendant for work done or repairs made which were the responsibility of plaintiff:

*Exhibit 1*

| | |
|---|---|
| (1) Labor to remove rock in trench at Bldg. 4 and dig tunnel in court yard. (Ex. 1) | $268.00 |
| Plus-payroll costs 15% | 42.00 |
| | $310.00 |

*Exhibit 2*

| | |
|---|---|
| (2) Veterans' Administration (sprinkler damage) | $152.01 |
| (3) Rental of Path Transit | 67.75 |
| (4) Cal Construction for backfilling | 239.67 |
| | $459.43 |

Defendant failed to carry the burden of proof that Items 4 and 5 on Exhibit 2 were the responsibility of plaintiff.

*Exhibit 3*

(5) Bill of Chatham Electric Co. for repairs to street lighting cables severed by plaintiff's operations     $2,117.34

*Exhibit 4*

(6) Clean trench     42.30
Overhead 15%     6.35
    $48.65

Defendant failed to carry the burden of proof that the remainder of items on Exhibit 4 were the responsibility of plaintiff.

The evidence in support of the items of defendant's counterclaim that we have not allowed was confusing and contradicted. It became an issue of credibility between defendant's witness and plaintiff's witness on matters where they relied chiefly on memory of events several years past, without corroborative evidence in support. In such instances we find that the claiming party has failed to prove the claim by a preponderance of the evidence.

The claim for repairs to the broken street lighting cables was largely supported by the plaintiff's own admission on cross-examination (T. pp. 101–102). We find that the plaintiff failed to exercise reasonable care to avoid these damages. The amount claimed is the actual amount paid by defendant to Chatham Electric Company.

We, therefore, find the defendant entitled to recover on its counterclaim the following:

From Exhibit 1     310.20
From Exhibit 2     459.43
From Exhibit 3     2,117.34
From Exhibit 4     48.65
    2,935.62

The foregoing shall constitute the Findings of Fact and Conclusions of Law of the Court in this matter heard by the Court without a jury.