Veronica F. Gay, and John J. Gay, Husband and Wife, Plaintiffs, v. S. N. Nielsen Company, Defendant-Appellee, Robert R. Anderson Company, Defendant-Appellant, and City of Joliet, a Municipal Corporation, Defendant-Appellee.

S. N. Nielsen Company, Cross-Complainant-Appellee, v. Robert R. Anderson Company, Counter-Defendant-Appellant.

City of Joliet, a Municipal Corporation, Cross-Claimant-Appellee, v. S. N. Nielsen Company, Counter-Defendant-Appellee, and Robert R. Anderson Company, Counter-Defendant-Appellant.

Robert R. Anderson Company, Cross-Complainant-Appellant, v. S. N. Nielsen Company, Counter-Defendant-Appellee.

Gen. No. 11,136.

Second District, Second Division.

June 16, 1958.

Rehearing denied September 12, 1958.

Released for publication September 12, 1958.

Gray, Thomas, Wallace and O'Brien, of Joliet, for
Robert R. Anderson Company, defendant-appellant.

Healy, Newby, Barrett & Healy, and Ralph C. Murphy, all of Chicago, for S. N. Nielsen Company, counterclaimant-appellee.

James M. Bartley, and Paul F. Brumund, both of Joliet, for City of Joliet, appellee.

JUSTICE SOLFISBURG delivered the opinion of the court.

This is an appeal by defendant, Robert R. Anderson Company, a corporation, from a portion of a judgment entered in the Circuit Court of Will county on three counter-claims in this cause.

The plaintiffs, Veronica F. Gay and John J. Gay, filed this suit against the City of Joliet, Illinois, a municipal corporation, S. N. Nielsen Company, a corporation, and Robert R. Anderson Company, a corporation, for property damage caused by blasting done in connection with the installation of a sewer in the City of Joliet. For convenience, S. N. Nielsen Company is referred to hereinafter as "Nielsen" or the prime contractor, and Robert R. Anderson Company is referred to as "Anderson" or the sub-contractor. The three defendants conceded liability to the plaintiffs in the first instance, and by stipulation a judgment (referred to in this opinion as the "Gay judgment") in the sum of $5,000 was entered in favor of plaintiffs and against all three defendants, and a stay of execution to permit litigation of certain counter-claims was provided.

The city filed counter-claims against both Nielsen and Anderson claiming each was required to indemnify it against the Gay judgment. Each contractor filed a counter-claim against the other. Nielsen claimed that it should be indemnified against the Gay judgment by Anderson because Anderson actually set off the explosives, and Anderson claimed damages based

370

upon Nielsen's breach of its contract to procure insurance protection for Anderson. The issues presented by the counter-claim were submitted to the trial judge on the pleadings, the prime contract, the sub-contract, certain exhibits relating to insurance, and certain stipulations of the parties. Thereafter the trial judge entered a judgment order finding that Nielsen was required to indemnify the city against the Gay judgment; that Anderson was required to indemnify both the city and Nielsen against the same Gay judgment and that Anderson was not entitled to recover against Nielsen on its counter-claim for breach of contract. From that judgment only the defendant Anderson has appealed.

The parties in their briefs and arguments have argued principally two issues: first, whether under the facts here the common law of this state confers upon Nielsen a right of indemnity against Anderson, and, second, whether the contractual agreements of the parties here involved grant to Nielsen any right of indemnity against Anderson. We shall take up the second of these issues first, since a conclusion thereon must necessarily be reached before the question of common law rights, if any, becomes important.

At the outset it should be pointed out that the Gay judgment was not predicated upon the negligence of anyone and that all three defendants conceded their liability to the plaintiffs, Veronica F. Gay and John J. Gay, for damage caused to their two dwelling houses as a result of blasting operations in the construction of the sewer. No issue is raised that any contractual provision to indemnify might be void or unenforceable as against the public policy of this State. Further, it is not disputed that under its prime contract with the city Nielsen is required to indemnify the city against the Gay judgment. The controversy revolves about the question of ultimate liability and indemnity

371

as between Nielsen and Anderson and whether one or the other of those corporations must ultimately bear the entire burden of the Gay judgment.

Turning first to the prime contract between the city and Nielsen, it requires the prime contractor to construct and complete a sewer and water main project in accordance with the terms of the prime contract, plans and specifications. The prime contract includes a provision designated Page KK–1, 3(c) which provides in pertinent part as follows:

"The Contractor agrees to indemnify and save the Owner harmless against all claims for damages to real or personal property or for injuries to persons, or deaths caused in any manner whatsoever, by explosions, blasting, handling or storing of explosives for the work hereunder."

The sub-contract between Nielsen and Anderson, after the customary preliminary paragraph, reads in pertinent part:

"That the Sub-Contractor agrees for certain hereinafter specified considerations to furnish all materials, labor, equipment, scaffolding, transportation and services necessary and required to manufacture, finish, deliver, erect, install and fully complete, according to and as required by plans, specifications, addenda and bulletins thereto, prepared by Consoer, Townsend and Associates, Consulting Engineers, 351 East Ohio Street, Chicago 11, Illinois. . . . Architect, the following described work in the construction of the Sewage Works Improvement Project, Contract No. 9, Divisions A, B and C to wit: All work complete Division "B" Intercepting Sewers and Division "C" Water Mains . . . to be erected at Joliet, Illinois

and the Sub-Contractor further agrees to fully relieve the Contractor of all responsibility for finishing and

372

■■■■■■■■■■■■

completing the said work in accordance with the Contractor's General Contract with City of Joliet, Illinois. . . .

hereinafter designated the Owner in the construction/ alteration of the above-named project, and agrees that the terms and provisions of said General Contract, except as specifically modified by this Agreement, between the Contractor and

said Owner, dated the thirtieth . . . day of August . . . 1955, are made a part of this Agreement: and further, that the Sub-Contractor grants to said Contractor those rights, powers, and remedies in every detail and respect and in the same language and intent which the Contractor and Owner reserve to themselves in the said General Contract.

. . . . .

"6. The Sub-Contractor shall protect and indemnify said Contractor and Owner, and each of them against any liability, loss or damage suffered by any one arising through the negligence of the Sub-Contractor or those employed by him or his agent or servants: he shall bear any costs, attorney's fees and expenses which the Contractor may have by reason thereof, or on account of being charged therewith;

. . . . .

"8. That the Sub-Contractor will procure at his own expense Workmen's Compensation, Employer's Liability, Public Liability and Property Damage Insurance policies issued by a reliable insurance company or companies satisfactory to the Contractor, and to furnish the said Contractor a certificate from the said insurance company or companies showing such coverage in limits satisfactory to the Contractor, said policies to remain in full force and effect at all times until the complete performance on the part of the Sub-Contractor of this Sub-Contract; and to indemnify

the Owner and Contractor against all claims, demands, loss, liability, and damages, including costs and attorneys' fees, in the event of suit arising from accidents to persons or property occasioned by said Sub-Contractor or his employees. All policies shall be amended to read 'Not to be cancelled until ten days after written notice to the Contractor by registered mail.'"

 Since, as previously noted, no claim is made here that any contractual provision for indemnification would be invalid or unenforceable as against public policy, the question to be first considered is whether any of the clauses of the sub-contract quoted were broad enough to indemnify and save Nielsen and the city harmless from the Gay judgment. Nielsen and the city contend that the indemnity clauses are sufficiently broad, while Anderson insists that they are not. An indemnity contract or contract provision is to be construed like any other contract, and the primary rule of construction is to seek to ascertain the intention of the parties as revealed by an examination of the entire contract, Reconstruction Finance Corp. v. Teter, 117 F.2d 716, cert. den. 314 U. S. 620, 86 L. Ed. 498. Unless a contract is ambiguous, its meaning must be determined from the words used, Westinghouse Co. v. Bldg. Corp., 395 Ill. 429; Northern States Co., Inc. v. A. Finkl & Sons Co., 8 Ill.App.2d 419; Aluminum Co. of America v. Hully, 200 F.2d 257; and in construing a contract which purports on its face to be a complete expression of the entire agreement, courts will not add thereto another term about which the agreement is silent, Green v. Ashland Sixty-Third State Bank, 346 Ill. 174. Courts are not authorized to make contracts for the parties but must construe them as written. A contract must be given a fair and reasonable interpretation, and from the entire contract, as expressed in the language used and considered in the light of the circumstances under which it was made, the court must

374

ascertain the intent of the parties, Chicago N. W. Ry. Co. v. Chicago Packaged Fuel Co., 195 F.2d 467.

The situation which the sub-contract, including the indemnity provisions, contemplated was that Anderson would take over fully and completely "responsibility for finishing and completing" the Divisions B and C of the sewer project in question. The prime contract was made a part of the sub-contract, and in the sub-contract the sub-contractor granted "to said Contractor those rights, powers, and remedies in every detail and respect and in the same language and intent which the Contractor and Owner reserves to themselves in the said General Contract." It was the plain intention of the parties that the sub-contractor was to fulfill the entire contract for construction of the sewers and water mains referred to in the sub-contract. That being true, it is also clear that the work would be done under the direct control of Anderson and its employees, and that, except for periodic inspection, Nielsen and its employees would have little reason even to be in the vicinity of the construction work. The prime contract and the sub-contract both contemplated the use of explosives for necessary blasting. The risks associated with blasting, even where the explosives are handled carefully, are matters of common knowledge.

Since it is conceded that the damage in question did not result from negligence, the contract provision applicable here, if any provision applies, is found in paragraph 8 of the sub-contract. That paragraph states "That the Sub-Contractor will procure at his own expense Workmen's Compensation, Employer's Liability, Public Liability and Property Damage Insurance policies . . . said policies to remain in full force and effect at all times until the complete performance on the part of the Sub-Contractor of this Sub-Contract; and to indemnify the Owner and Contractor against

375

all claims, demands, loss, liability and damages, including costs and attorneys' fees, in the event of suit *arising from accidents to persons or property occasioned by said Sub-Contractor or his employees. . . ."* (Italics supplied.)

▪ When the ordinary and usual significance is given to the words used in the clause just quoted and they are considered in relation to the circumstances of the contract and sub-contract and the damage that resulted, it is clear that it was the intention of the parties that the sub-contractor should indemnify and save the city and Nielsen harmless from the kind of demands made by Mr. and Mrs. Gay. Anderson strenuously contends that the reference to negligence in paragraphs 6 and 8 of the sub-contract restricts its obligation to indemnify to those cases where Anderson or its agents or servants were themselves guilty of negligence which caused the loss or damage. We believe that a careful reading of the sub-contract shows that the various paragraphs and clauses of the sub-contract concerning indemnification pertain to different factual situations and that references to negligence in other paragraphs or sub-paragraphs cannot properly be transferred into the clause quoted. Anderson further contends that when indemnity provisions are ambiguous or equivocal, they should be strictly construed against the indemnitee and especially so when printed upon the indemnitee's form. Anderson's statement of legal principle is a correct one, but we cannot agree that the sub-contract indemnity provision quoted is ambiguous or that it is limited in its scope to merely negligent acts of the sub-contractor.

▪ A contract is to be construed as a whole, giving meaning and effect to every provision and word, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose, J. J. Brown Co., Inc. v. J. L. Simmons Co., 2 Ill.App.2d 132, 138, I. L. P. Contracts, § 215.

In the phrase "in the event of suit arising from *accidents* to persons or property *occasioned by* said Sub-Contractor or his employees," the word "accidents" certainly encompasses more than the results caused by negligence. As a matter of fact, Webster's New International Dictionary, after defining "accident" as a "befalling," "an event that takes place without one's foresight or expectation" states that in law an accident is "an unexpected happening not due to any negligence or malfeasance of the party concerned." Similarly, the word "occasioned" does not carry with it any connotation that limits its scope to negligent causation. We have examined numerous decisions involving phrases from indemnity contracts, and the one perhaps most similar is found in American Bridge Co. v. Crawford, 31 F.2d 708 ("the vendor accepts the provisions of the Workmen's Compensation Law of Pennsylvania, and will save harmless, defend and indemnify the vendee from any loss *occasioned* thereby"). It was held in that case that the contractor was entitled to recover from the sub-contractor the compensation which, pursuant to a workmen's compensation award, the former had paid on account of the accidental death of an employee of the sub-contractor. The Circuit Court of Appeals was careful to point out in its decision that the death of the sub-contractor's employee was "accidental" and occurred while in the course of his employment in the erection of the steel for the boiler house under the sub-contract. In construing the word "occasioned" there, the court held that the award paid by the general contractor was occasioned by and in the erection of the steel for the boiler house, which was solely the contractual responsibility of the sub-contractor, and therefore within the scope of the indemnity provision above quoted.

Other decisions tend to support our conclusion, although the language of the particular indemnity provision is not the same: Northern States Co. v. A. Finkl

& Sons Co., 8 Ill.App.2d 419 ("arising directly or indirectly from or in connection with"); Russell v. Shell Oil Co., 339 Ill. App. 168 ("resulting from or arising in connection with"); Hartford A. & I. Co. v. Worden-Allen Co., 238 Wis. 124, 297 N. W. 436 ("due to, arising from or connected with"); Govero v. Standard Oil Co., 192 F.2d 962 ("arising out of or resulting from"); Chicago & N. W. R. Co. v. Chicago Packaged Fuel Co., 183 F.2d 630, later appeal, 195 F.2d 467 ("arising, wholly or in part, from or in connection with").

■ We find the conclusion irresistible that the quoted sentence from paragraph 8 of the sub-contract is not ambiguous or equivocal but clear and precise, and that it is sufficiently broad in scope to include the loss or damage sustained by the city and Nielsen as a result of the rendering of the Gay judgment. Accordingly, the trial judge did not err in so holding. Having concluded that Nielsen is entitled to be indemnified by Anderson by virtue of their contractual agreement, it becomes unnecessary to inquire into the question of any common law right of indemnification.

Anderson makes the additional contention that Nielsen failed to procure certain comprehensive public liability and property damage insurance required by Page E–2, 3(b) of the prime contract to protect the city, Nielsen and any sub-contractors, thereby allegedly causing damage to Anderson if it be required to pay the Gay judgment. We find no merit in this contention. The prime contract, Page E–4, 3(e), specifically provides that Nielsen shall require sub-contractors, if any, not protected under the contractor's insurance policies to take out and maintain insurance of the same nature and in the same amounts as required of the contractor for comprehensive public liability and property damage, and that obligation was expressly imposed on sub-contractor Anderson by paragraph 8 of the sub-contract. It is not disputed that

Anderson procured such insurance coverage. Apart from the question whether, already having insurance coverage, Anderson could prove damages as a result of this alleged breach of contract, we deem it clear beyond doubt that the provisions just referred to in the prime contract and the sub-contract show that it was intended by the parties that Anderson should procure insurance coverage at its own expense covering comprehensive public liability and property damage risks, and Anderson in fact did so.

Having concluded that the judgment of the Circuit Court of Will county appealed from was correct, the same is hereby affirmed.

Affirmed.

CROW, P. J. and WRIGHT, J., concur.