Edward Raymond SPURR, Plaintiff,

v.

ACME STEEL COMPANY, a corporation, et al., Defendants.

ACME STEEL COMPANY, a corporation, and LaSalle Construction Company, a corporation, Third-Party Plaintiffs,

v.

S. J. REYNOLDS COMPANY, Inc., Third-Party Defendant.

No. 60 C 1360.

United States District Court
N. D. Illinois, E. D.
Oct. 27, 1964.

Philip H. Corboy, Chicago, Ill., for plaintiff.

William J. McKenna, Jacobs & McKenna, Chicago, Ill., for Acme Steel Co.

Harold W. Huff, John W. Gilligan and Richard J. Kissel, Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., for LaSalle Const. Co.

Harlan L. Hackbert, Stevenson, Conaghan, Hackbert, Rooks & Pitts, Chicago, Ill., for American Bridge.

Bruce Parkhill and Vogel & Vogel, Chicago, Ill., for S. J. Reynolds.

DECKER, District Judge.

While working as a pipefitter on the construction of a facility for Acme Steel Company (Acme), the plaintiff, Spurr, an employee of S. J. Reynolds Company, Inc. (Reynolds), fell into an open pit and was severely injured.

Spurr brought an action for negligence against Acme, as the owner, American Bridge Division of United States Steel Corp. (American Bridge), as the prime contractor, and LaSalle Construction Company (LaSalle), as the general contractor. The jury found in favor of Spurr against LaSalle and American Bridge in the amount of $250,000 and found in favor of Acme. American Bridge's motion for judgment notwithstanding the verdict has been granted.

This is the third-party action by Acme and LaSalle against Reynolds, which was a sub-contractor on the job. Both third-party plaintiffs seek costs and attorneys' fees, and LaSalle seeks indemnity for the judgment rendered against it. This cause of action is based upon a contract between Reynolds and LaSalle which inures to the benefit of Acme.

The indemnity agreement in issue states, in part, the following:

> "The Sub-Contractor [Reynolds] shall indemnify and save harmless the Owner [Acme], the Engineer, the Contractor [LaSalle] and their respective agents from any and all liability, payments and expenses of any nature for injury or death to any person * * * caused or alleged to have been caused by the Sub-Contractor, or incidental to the execution of work under this contract by the Sub-Contractor, his agents or his employees; and the Sub-Contractor shall maintain * * * insurance * * * such as Workmen's Compensation * * *."

■■ The agreement clearly covers any injury which is caused or alleged to have been caused by the sub-contractor; Reynolds insists that this is the only interpretation. But if the clause "incidental to the execution of work under this contract by the Sub-Contractor" is read as suggested by Reynolds, that is, to include only injuries caused or alleged to be caused by the sub-contractor, then "or" is not given a natural meaning. In this case "or" is a conjunction and the "or incidental to" clause must be read as something different from that which has preceded it. Every provision in a contract must, if possible, be given effect, because it is presumed that each was deliberately inserted. Gay v. S. N. Nielsen Co., 18 Ill.App.2d 368, 376, 152 N.E.2d 468 (1958).

"Incidental" is generally defined as follows:

> "[B]eing likely to ensue as a chance or minor consequence—usu. used with *to* * * *" Webster's Third

New International Dictionary (1963).

"A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in the fulfillment of his contract of service, and it may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected therewith." Gustafson Co. v. Industrial Comm., 348 Ill. 11, 15, 180 N.E. 567, 569 (1932).

See, also, Northwestern Yeast Co. v. Indus. Comm., 378 Ill. 195, 197, 37 N.E. 2d 806 (1941).

The accident which was the basis for Spurr's complaint was within the language of the indemnity agreement—it was incidental to the execution of Reynold's work under its contract with La-Salle.

Therefore, without further question, Acme's motion for expenses must be granted.

In the case of LaSalle, the problem now before the Court is whether the indemnity agreement applies to the accident in question where LaSalle, the indemnitee, was found negligent.

If the language of the indemnity clause is to be limited so that it excludes liability for the negligence of the indemnitee, the limitation either must be based upon the parties' intention not to include such liability, or must be based upon considerations of public policy that require a construction which excludes such liability. As discussed above, it is clear that the plain language of the agreement of the contract includes this liability.

I now turn to the Illinois law to determine when and how an indemnitee can be indemnified against his own negligence.

In Westinghouse Electric Elevator Co. v. La Salle Monroe Bldg. Corp., 395 Ill. 429, 70 N.E.2d 604 (1946), the Illinois Supreme Court considered this problem in dictum only, because the contract of indemnity, by its terms, was limited to acts or omissions of the indemnitor. The appellant based its claim upon a contract provision by which the appellee was to provide insurance. The Court said (at pp. 434–435, 70 N.E.2d p. 607):

"Appellant insists that appellee breached its covenant to provide insurance for appellant's protection, therefore as a matter of law, appellee cannot impose upon appellant a loss, which, but for such breach, would have been borne by an insurance carrier.

"To adopt this construction of the contract would impose on the contractor the duty to indemnify against injuries entirely without his control, and such should not be adopted in the absence of clear language in the contract including injuries arising from the negligence of appellant's own servants."

The Illinois court considered inclusory language necessary because it adopted a theory which places the loss upon the party more likely to be in a position to prevent the particular negligence.

In Westinghouse, supra, reliance was placed upon a Pennsylvania case, Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L. R.A.,N.S., 1173 (1907). In this case, the court held that an indemnity agreement must specifically refer to the acts or negligence of the indemnitee. The Court stated its reasons as follows (66 A. at p. 555):

"It is contrary to experience and against reason that the contractors should agree to indemnify Perry against the negligence of himself or his employés. It would make them insurers, and impose a liability upon the contractors, the extent of which would be uncertain and indefinite, and entirely in the hands of Perry. The results of such a liability might become most disastrous. While the consideration named in the contract for the construction of the building and indemnifying the owner was large, yet it was wholly inadequate to justify the contractors

in assuming liability for his negligence in view of the responsibility in constructing the building. The profits to be realized on the contract were entirely too small to warrant the contractors in agreeing to assume a liability of such great proportions and of such unlimited extent."

A review of cases decided under Illinois law subsequent to Westinghouse leads to the conclusion that the policy considerations underlying indemnification have shifted. Formerly, the presumption was that one would not undertake to indemnify another against a risk not within the former's control; but the law has evolved because of a realization that accidents are an almost inevitable incident of a complex mechanical society. It is now recognized that parties, through indemnity contracts, are allocating the burden of procuring insurance.

In Russell, for Use of Continental Cas. Co. v. Shell Oil Co., 339 Ill.App. 168, at pp. 170–171, 89 N.E.2d 415, at p. 416 (1949), the contract of indemnity provided:

> " 'Contractor shall hold Shell harmless from any and all claims for injury (including death), to persons (including Contractor's agents and employees), or damage to property (including Contractor's property), resulting from or arising in connection with any of Contractor's operations, shall defend any such claim asserted or suit brought against Shell thereon, and shall pay any judgment against Shell resulting in any such suit; '* * *.' "

The facts in Russell, supra, are substantially similar to the case at bar; the Court held that the indemnitee's negligence was included within the broad language of the contract.

In Northern States Co., Inc. v. A. Finkl & Sons Co., 8 Ill.App.2d 419, 420, 132 N.E.2d 59, 60 (1956), the injury to the indemnitor's employee was caused by the negligence of the indemnitee's employees. The indemnity provision was the following:

> " 'It is expressly understood and agreed that the Contractor shall be responsible for any and all injury due to damage to any person and/or property, including loss of human life arising *directly or indirectly* from or in connection with work performed or to be performed under this contract, including extra work, and shall hold the Owner harmless of any and all loss or damage from such injury, damage or death.' " (Emphasis in opinion.)

The indemnity was held valid and enforceable.

Another case in point is De Tienne v. S. N. Nielsen Co., 45 Ill.App.2d 231, 195 N.E.2d 240 (1963). The indemnity agreement provided (at p. 233, 195 N.E. 2d at p. 242):

> " 'The Sub-contractor shall indemnify and save the Owner, Architect and General Contractor harmless against any and all claims for damages to persons, caused directly or indirectly or occasioned by the execution of the work included in this order. * * *.' "

Employees of the general contractor caused the injury to the sub-contractor's employee; nevertheless, the broad, all-inclusive language of the indemnity was held to include this situation.

The Federal courts have also had occasion to consider an indemnity agreement under Illinois law. The most recent case is Bentley v. Palmer House Company, 332 F.2d 107 (7th Cir. 1964). In this case the Court stated (at p. 111):

> "The contract in the instant case states that appellee will indemnify appellants against '*any and all* liability and expenses for personal injury * * * arising from or out of the use by * * * [appellee] of its exhibit space or its activity in connection herewith.' (Emphasis added.) This language is clear, explicit and unambiguous and demonstrates to our satisfaction that the intention of the parties was to provide indemnity for appellants

**610**

against their own negligence. See De Tienne v. S. N. Nielsen Company, 45 Ill.App.2d 231, 195 N.E.2d 240 (1963)."

Other cases have been cited by the parties which are distinguishable. See George Sollitt Const. Co. v. Gateway Erectors, Inc., 260 F.2d 165 (7th Cir. 1958) (indemnity provision unclear); Bounougias v. Republic Steel Corporation, 277 F.2d 726 (7th Cir. 1960) (indemnity specifically included negligence of the indemnitee); Gay v. S. N. Nielsen, 18 Ill.App.2d 368, 152 N.E.2d 468 (1958) (no negligence involved).

 Upon this examination of the cases under Illinois law, I have come to the conclusion that a broad, all encompassing indemnity provision, such as the one in the case before me, is sufficient to include the negligence of the indemnitee as the cause of the damage.

Some courts still hold the view that there is a presumption against one person shifting the burden of damages from his own conduct to another. See e. g. Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc., 404 Pa. 53, 171 A.2d 185 (1961).

Nevertheless, the attitude toward torts has changed; as one court stated: "Today, torts are mainly the incidents of industry and transportation." Moroni v. Intrusion-Prepakt, Inc., 24 Ill.App.2d 534, 538, 165 N.E.2d 346, 349 (1960).

In Perry v. Payne, supra, the court based its opinion, in part, upon a feeling that one party would not undertake a very large indemnity upon a very small job; but today, in reality, the indemnity agreements do not shift the loss, but shift the burden of paying for and procuring insurance. Mr. Justice Dempsey explained this in a recent case which is very similar to the case now before me:

"Any large construction project involves the simultaneous work of many subcontractors. The workmen employed by contractors and subcontractors necessarily labor in conjunction with or close to one another. The risk of injury is constant. It

is not uncommon, particularly in complex structures and highrise buildings, for the contractor and the subcontractors, and the owner too, to apportion the risk among themselves." De Tienne v. S. N. Nielsen Co., supra, 45 Ill.App.2d at p. 236, 195 N.E.2d at p. 243.

See also, Meeks v. George A. Fuller Co., 40 Ill.App.2d 172, 178–179, 189 N. E.2d 387 (1963).

 When a contract is clear on its face, and when there is no dispute as to the facts which would cause that contract to operate, the question of construction is a question of law which the court must decide. Willman v. Alver, 252 F.2d 895, 898 (9th Cir. 1958); Pittsburgh Railways Co. v. Equitable Life Assur. Soc., 288 F.2d 640, 642 (3d Cir. 1961).

I therefore grant the third-party plaintiffs' motion for judgment in their favor on Count I of the third-party complaint.

The third-party plaintiffs will submit an appropriate order within fifteen days.