Roy D. HANLEY, Plaintiff,

v.

JAMES McHUGH CONSTRUCTION COMPANY, Defendant-Third-Party Plaintiff, Appellant,

v.

TITAN ORNAMENTAL IRON WORKS, Third-Party Defendant, Appellee.

No. 18623.

United States Court of Appeals, Seventh Circuit.

June 17, 1971.

C. Roy Peterson, Thomas W. Dempsey, Chicago, Ill., for defendant-third-party plaintiff, appellant; Lord, Bissell & Brook, Chicago, Ill., of counsel.

John R. Caffrey, James T. Ferrini, Fredric J. Grossman, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for third-party defendant, appellee.

Before HASTINGS, Senior Circuit Judge, and KERNER and PELL, Circuit Judges.

HASTINGS, Senior Circuit Judge.

This appeal arises from a third party complaint for indemnity filed by James McHugh Construction Company (McHugh) against Titan Ornamental Iron Works, Inc. (Titan), both Illinois corporations. In a diversity action, third party plaintiff McHugh was sued by Roy D. Hanley, an Indiana resident and an employee of third party defendant Titan, for personal injuries received by him while working at a construction site where McHugh was general contractor. Prior to trial, McHugh and Titan moved for summary judgment against each other in the third party action. The trial court denied McHugh's motion and granted summary judgment to Titan. A jury subsequently awarded plaintiff Hanley a money judgment in the primary suit. McHugh's post-trial motions for vacation of the summary judgment rulings were denied. McHugh appeals from the summary judgment favorable to Titan and the rulings on the above motions. We affirm.

The facts relevant to this appeal are not substantially in dispute. Roy Hanley was employed by Titan as an iron worker. On the afternoon of February 14, 1967, he was struck and injured by an eight foot section of a wooden 4″ x 4″ as he was unloading a truck at the construction site of the Lincoln Park Tower Apartments in Chicago.

McHugh was general contractor at the site and had engaged Titan as a subcontractor to furnish and install metal and structural steel work. Robert Skinner, McHugh's superintendent, was in general charge of the job and was authorized to stop work under severe emergency conditions.

The morning of the accident, Titan's foreman, Schedin, talked with Skinner to ascertain when and where materials could be delivered. Skinner gave him a time schedule[1] for delivery and directed him to unload at the east end of the loading dock on the north side of the building, an area close to the building entrance and the materials hoist which had been cleared of snow. The accident occurred while Schedin and Hanley were unloading materials in the designated place pursuant to the time schedule.

Although the day was windy,[2] the only testimony which related to the cause of the accident was from John Montalbano, then an employee of McHugh. Montalbano witnessed the occurrence from about the seventeenth floor of the building. He testified on deposition that he saw some men working on a hoist that was being constructed between the nineteenth and twentieth floors of the building. In an attempt to position the cathead—the mechanism that raises and lowers the hoist's mancage—one of the men was using an eight foot 4″ x 4″ as a lever. Montalbano did not see the plank leave anyone's hands, but he testified he saw it as it was "just about leaving the hoist." He watched the plank as it fell. It struck a tower on the third floor level, bounced off intact and then broke in half upon striking Hanley. He further stated that there were other 4″ x 4″ planks in use in the framing of the then top decks of the building. Titan had no employees working above the eighth floor.

McHugh based its third party complaint on the subcontracting agreement between Titan and McHugh which con-

1. Skinner testified that it was very important for the trades to adhere to the time schedule since otherwise everybody would be backed up on their deliveries. The day of the accident, there were employees of five other subcontractors present at the job site, in addition to the employees of Titan and McHugh.

2. Schedin testified that he saw pebble-like pieces of concrete being blown off the building and he observed sash men securing their light-weight aluminum. Skinner testified that he had returned a 4′ x 8′ piece of plywood to the building from across the street and that he knew of at least four small plywood cutouts that had blown out of the building. There was no evidence, however, that the wind had blown anything off the building the weight or bulk of the eight foot 4″ x 4″.

tained the following "hold harmless" clause:

"Sub-contractor agrees to indemnify Contractor and Owner against and save them harmless from any and all claims, losses, liabilities, costs, expenses, attorney's fees and judgments arising out of or asserted because of: (a) any acts or omissions of Sub-contractor, his employees, agents, suppliers or sub-contractors, * * * or (c) Contractor's contractual or legal liability for damages suffered or claimed to be suffered by any person, firm or corporation on account of any acts or omissions of Sub-contractor, his employees, agents, suppliers or sub-contractors, regardless of whether or not such act or omission constitutes negligence."

The trial court, applying Illinois law, denied McHugh's motion for summary judgment since "the contract [made] no mention of negligence by McHugh being a subject of indemnification." The court granted summary judgment for Titan since there was "no basis for finding Titan responsible for the fall of the 4 x 4 from the 18th or 19th floor of the building under construction," and since there were no acts or omissions of Titan sufficient to constitute an intervening cause of the accident and thereby trigger the indemnity clause.

The principal issue presented for our determination is whether McHugh and Titan, by incorporating the above-quoted indemnity provision in the subcontracting agreement, intended that even if McHugh were guilty of misconduct, it would nevertheless be indemnified by Titan for losses sustained because of an injury to one of Titan's employees while engaged in work on the project.

█ Both parties recognize and adhere to the continuing vitality of the Illinois rule that an indemnity contract cannot be construed to protect the indemnitee from the consequences of its own negligence unless clear and explicit language of the contract requires it. Westinghouse Co. v. LaSalle Monroe Building Corp., 395 Ill. 429, 70 N.E.2d 604 (1946). See, e. g., Granite City Steel Co. v. Koppers Co., Inc., 7 Cir., 419 F.2d 1289, 1290 (1969); Bentley v. Palmer House Co., 7 Cir., 332 F.2d 107, 110 (1964). However, we have also held that general inclusive language may be sufficiently explicit without specific reference to liability arising out of the indemnitee's negligence. Spurr v. LaSalle Construction Co., 7 Cir., 385 F.2d 322, 330 (1967); cf., Bentley v. Palmer House Co., supra. See, e. g., De Tienne v. S. N. Nielsen Co., 45 Ill.App.2d 231, 195 N.E.2d 240 (1963); Gay v. S. N. Nielsen Co., 18 Ill.App.2d 368, 152 N.E.2d 468 (1958).

Subsection (a) of the indemnity clause in the instant case contains language admittedly substantially identical to that construed in the Westinghouse case, supra. In Westinghouse, an employee of a contractor hired to reconstruct a building's elevators was killed in the performance of his duties. An employee of the building's owners was requested by a subcontractor to move an elevator to the top of the building. After taking the elevator up, the employee left it unattended in neutral. The elevator broke loose from its moorings and fell catching the contractor's employee who had his head in the shaft.

The building owner raised the language of the contract as an affirmative defense to a suit by the contractor to recover compensation paid on behalf of the dead employee. The contract contained the following provision: "The contractor agrees to indemnify and hold the owner * * * wholly harmless from any damages, claims * * * arising out of any acts or omissions by the Contractor * * * in the course of any work done * * *." The Illinois Supreme Court thought the above-quoted language was plain and unambiguous and that indemnification under the agreement was specifically limited to acts or omissions by the contractor. It thus held that such language was not sufficiently inclusive to provide for indemnification of the indemnitee's own negligence. We think the holding of Westinghouse is control-

ling, at least, as to subsection (a) of the indemnity agreement.

Appellant argues, however, that subsection (c) of such agreement providing for indemnity for "Contractor's contractual or legal liability * * * on account of any acts or omissions of Sub-contractor * * * *regardless of whether or not such act or omission constitutes negligence,*" removes this case from the holding of *Westinghouse.* It is appellant's position that the italicized language not only removed negligence of appellee as an indemnity requirement, but it also excised causation as such a requirement and made it sufficient for indemnity to attach if Titan's performance of the subcontract furnished a condition for the accident. We disagree.

■ Causation and negligence are not identical as appellant seems to imply throughout its briefs. While negligence liability cannot occur without causation, an act or omission may cause an injury without resulting in negligence liability. It is this latter situation which we think the parties explicitly and unambiguously provided for with the addition of subsection (c) to the indemnity clause.

■ In construing the words of a contract, they must be read naturally, *Spurr v. LaSalle Construction Co., supra,* and every provision must be given effect, if possible. Gay v. S. N. Nielsen Co., *supra,* 18 Ill.App.2d at 376, 152 N. E.2d 468. See Spurr v. Acme Steel Co., N.D.Ill., 238 F.Supp. 606, 607 (1964), aff'd, 7 Cir., 385 F.2d 322 (1967). The parties in the instant case provided for indemnity when appellant was liable "on account of any acts or omissions" of appellee. "On account of" is commonly defined as "because of" or "by reason of." Funk & Wagnalls New Standard Dictionary of the English Language (1942); Webster's New International Dictionary (2d Ed. 1957). The phrase "regardless of whether or not such act or omission constitutes negligence" may be read consistently with "on account of" only if the causation element is not destroyed thereby.

■ In this context and under the facts found present in this case, we believe *Westinghouse, supra,* governs. In *Westinghouse,* as here, the injury resulted from the negligence of the indemnitee's employee. There, as much as here, the indemnitor's acts or omissions provided the precondition necessary for the injury to occur, i. e., physical presence at the right time and place. There were no acts or omissions of the indemnitor or its employees that may have been said to have proximately caused the accident in either case.[3] In short, the removal of negligence by subsection (c) of the instant agreement as a requirement for indemnity in no way changed the element of causation found lacking in *Westinghouse* and which we deem necessary within the language of the present contract.

The cases cited by appellant do not compel a contrary result. Jeschke v. Mercury Builders, Inc., 122 Ill.App.2d 461, 259 N.E.2d 342 (1970); De Tienne v. S. N. Nielsen Co., 45 Ill.App.2d 231, 195 N.E.2d 240 (1963); and Gay v. S. N. Nielsen Co., 18 Ill.App.2d 368, 152 N.E.2d 468 (1958) were all cases in which the courts had to construe the effect of the phrase "occasioned by" as used in the indemnity contracts. In each case, the indemnity provision contained a specific reference to the indemnitor's causation of injury as well as to injuries "occasioned by" the indemnitor. *Jeschke* and *De Tienne* noted that the phrase had dual meanings and in order to give effect to such phrase, "occasioned by" had to mean "that which, either directly or indirectly, provides an opportunity for the causal agencies to act or serves to set them in motion."

---

3. Appellant in its brief lists thirteen acts or omissions which it contends would have triggered the indemnity clause. They range from "performance of work under the contract" to omissions with knowledge of the debris that was being blown by the wind. The trial court found, and we agree, that none of these acts or omissions was sufficient to constitute an intervening cause of the injuries to Hanley.

*De Tienne, supra,* 45 Ill.App.2d at 235, 195 N.E.2d at 243. In the present case we are not presented with a phrase that has dual meanings; rather, "on account of" clearly requires a causal connection.

Similarly, Spurr v. LaSalle Construction Company, *supra;* Halverson v. Campbell Soup Company, 7 Cir., 374 F. 2d 810 (1967) and Bentley v. Palmer House Company, *supra,* all involved contractual language substantially different from that in the instant case. In *Spurr,* we awarded indemnity to a contractor against a subcontractor under a clause that provided for such indemnity for injury "caused or alleged to have been caused by the Sub-Contractor, * * * or *incidental to the execution of work* under this contract by the Sub-Contractor * * *." The subcontractor's employee was engaged in his trade as a pipefitter when his wrench slipped and he fell backwards into a pit which had no protective barrier. His injuries were thus "incidental to the execution of work."

Likewise, in *Halverson,* we held that Campbell Soup Company was entitled to indemnity under a contract provision which provided that the injured man's employer "shall indemnify, defend and hold us harmless from all claims, liabilities and damages *arising from the work performed.*" The employee was injured while walking through Campbell's plant for instructions about delivery of equipment and tools that were to be used in his employer's work in the plant. In *Bentley,* an employee of an exhibitor at a convention was injured when a table used in its display booth collapsed. The employee sued the owner of the hotel where the convention was being held. The hotel filed a third party complaint against the exhibitor based on the agreement for the use of the space which provided, *inter alia,* that the exhibitor was to indemnify the hotel against "any and all liability and expenses for personal injury * * *

*arising from or out of the use by* * * * [exhibitor] *of its exhibit space or its activity in connection herewith.*" We held under the circumstances of that case that the parties had explicitly and unambiguously provided for indemnity of the hotel owner for its own negligence.[4] The language in the instant case, however, much more seriously delimits the liability of the indemnitor than the language in the above cited cases did, requiring that the legal or contractual liability be "on account of" acts or omissions of the indemnitor.

We are not persuaded that our construction of the contract is either contrary to the insurance provisions in the subcontracting agreement or that it, in effect, abrogates subsection (c). Subsections (a) and (c) set up separate layers of accountability for the indemnitor. *Cf.,* Jeschke v. Mercury Builders, Inc., *supra,* 122 Ill.App.2d at 464–465, 259 N.E.2d 342. In (a), the indemnitor would be liable to the indemnitee if they were equally negligent and in (c), the indemnitor would be liable to the indemnitee if the indemnitee were negligent and the indemnitor caused an injury, but for some reason was not negligent, *e. g.,* the indemnitor owed no duty to the injured party.

Accordingly, we hold that, in the circumstances of this case, the parties did not intend the indemnitor would be liable to the indemnitee for damages because of an injury to one of indemnitor's employees without regard to causation. Since, as the trial court found, there was no basis for finding that appellee caused the accident and, since absent causation, the parties did not intend the indemnitee to be indemnified for its own negligence, summary judgment was properly denied appellant and properly granted appellee.

The summary judgment and rulings appealed from are hereby affirmed.

Affirmed.

---

4. See also, Russell v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415 (1949), construing an indemnity clause which contained the phrase "resulting from or arising in connection with any of contractor's operations."