**MEDCOM HOLDING COMPANY,**
**Plaintiff–Appellee,**

**v.**

**BAXTER TRAVENOL LABORATORIES, INC., now known as Baxter International, Inc. and Medtrain, Inc., Defendants–Appellants.**

**No. 91–2008.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1992.
Decided Jan. 26, 1993.

Irene Savanis, Jonathan B. Newcomb, Daniel E. Reidy (argued), Jones, Day, Reavis & Pogue, Chicago, IL, for plaintiff-appellee.

Kathleen L. Roach, David F. Graham (argued), Michael I. Miller, Jon I. Fieldman, Sidley & Austin, Dorothy B. Zimbrakos, Donald A. O'Brien, Irving B. Levinson, Rivkin, Radler, Bayh, Hart & Kremer, Chicago, IL, Roger F. Lewis, Baxter Travenol Laboratories, Inc., Deerfield, IL, for defendants-appellants.

Before COFFEY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In this interlocutory appeal, appellants Baxter Travenol Laboratories, Inc. and its wholly owned subsidiary, Medtrain, Inc. (collectively "Baxter") appeal the grant of specific performance to the plaintiff, Medcom Holding, Inc. ("Holding") requiring Baxter to transfer and deliver all of its stock in Entertainment Partners, Inc. ("EPI") to Holding. This case continues in the district court on issues relating primarily to damages, and retrial of those issues has been stayed pursuant to our order of September 23, 1992 pending our judgment and opinion in this appeal. We have juris-

diction for this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).

## I.

### A) Procedural Posture

This dispute originated from a stock purchase agreement under which Holding agreed to purchase Medcom, a Baxter subsidiary. Holding's complaint against Baxter included claims for breach of the stock purchase agreement, common law fraud, and securities law violations. Holding's and Baxter's dispute over their agreement advanced to trial in 1990, after which the jury returned a verdict in favor of Holding on all counts and awarded compensatory and punitive damages. The jury made specific findings on numerous claims, including a finding "that Baxter breached the Stock Purchase Agreement as it relates to Entertainment Partners, Inc." (R. 471 at 3.) Because the amount of damages was not rationally related to the verdict, Judge Conlon ordered a new trial on the issue of compensatory damages. (R. 492.) Judge Conlon also referred Holding's request for both an accounting of the assets and liabilities of Entertainment Partners, Inc. ("EPI") and for an order of specific performance of the agreement with respect to EPI to a magistrate. (R. 491.) The magistrate recommended that the court grant Holding's request for an accounting and specific performance, and the court adopted this recommendation. (R. 592 & 593.) Baxter then filed its notice of appeal on the specific performance issue in this court. After a second trial in 1992 on compensatory damages, the jury returned a $9 million verdict on the Rule 10b–5 claim and a $4.3 million verdict on the breach of contract claim. (R. 615.) Because the court found that the jury's $9 million damage award on the securities fraud claim was not supported by the evidence, the court vacated this judgment as well, and a third trial is now pending on the issue of compensatory damages. (MEMORANDUM OPINION AND ORDER, 3/24/92,

1992 WL 67873, filed in this court 9/23/92.)[1] In an order dated September 23, 1992, we directed the district court to delay the third trial on damages until the issuance of our judgment and opinion in this appeal.

### B) The Stock Purchase Agreement

In 1986, Holding and Baxter agreed that Holding would purchase all of the stock of Medcom, Inc. ("Medcom"). The stock purchase agreement (JX 1) listed a $10,000 investment in EPI as one of Medcom's assets. The record reveals the following history of Medcom's relationship with EPI. Medcom originally subscribed to all 100 shares of the common stock of a company named Entertainment Two Film and Television Company, Ltd. ("Entertainment Two") for a price of $10,000, making Entertainment Two a wholly-owned subsidiary of Medcom. In 1983, Medcom's directors declared a dividend of all shares in Entertainment Two to Medtrain, Inc. ("Medtrain"), another Baxter subsidiary. (PX 125.) Although this dividend was recorded in Medcom's corporate records, Medcom did not delete Entertainment Two from its assets. Medtrain later changed the name of Entertainment Two to Entertainment Partners, Inc. (PX 148.) This name change—which occurred after the dividend to Medtrain— was reflected on Medcom's balance sheet. (JX 2 at Ex. 3.) Although Medcom no longer owned or had any investment in EPI, it continued to carry EPI on its list of assets throughout the negotiations with Holding.

On the first page of the agreement, Baxter promised:

> At the Closing ..., [Medcom] will own, directly or indirectly, all of the capital stock of each of the companies listed on Schedule 4 attached hereto (the "Subsidiaries"), including without limitation, the stock of Trainex Corporation, a Delaware corporation.

(JX 1 at 1). Among the subsidiaries listed at Schedule 4 was: "2. Investment of $10,-

---

1. Because the second jury trial took place after this appeal was filed, the proceedings from that trial are not a part of the record on appeal.

000 in Entertainment Partners, Inc. (See Schedule 1)." (JX 1 at Schedule 4.) Schedule 1, entitled "Liens, Encumbrances, Etc.," listed EPI and claimed that "Investment in Entertainment Partners, Inc. (see Schedule 4) is not documented and no interest or dividend payments have been received." (JX 1 at Schedule 1.) The other provision of the agreement that is important in this appeal is the *Assets and Title* paragraph.

> The Company or a Subsidiary has good and marketable title to, and exclusive ownership of all of the right, title and interest in and to, all of the assets of the Business, tangible and intangible (including, without limitation, trademarks, trade secrets, patents and patent applications and trade names), free and clear of any mortgage, lien, pledge, charge, claim or encumbrance, except as disclosed on Schedule 1....

(JX 1 at 10.) The $10,000 investment in EPI was also separately listed as an asset on 1) the balance sheet in Baxter's offering memorandum for Medcom, Inc.; 2) the balance sheet attached to the agreement and; 3) the Closing Balance Sheet.

At the closing, Baxter did not convey any EPI stock to Holding. The only issue before us in this interlocutory appeal is whether the grant of specific performance by the district court is an appropriate remedy for Baxter's breach of the agreement with regard to EPI. We affirm.

## II.

■ The first issue we need to resolve is whether the district court properly construed the agreement. Construction of an agreement between two Illinois corporations is governed by principles of Illinois law. *Air Line Stewards and Stewardesses Assoc., Local 550, etc. v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983). Our review of a district court's construction of a contract is *de novo*. *La Salle National Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). Under Illinois law, "[t]he intent of the parties to a contract must be determined with reference to the contract as a whole, not

merely by reference to particular words or isolated phrases, but by viewing each part in light of the others." *La Throp v. Bell Federal Savings & Loan Assoc.*, 68 Ill.2d 375, 12 Ill.Dec. 565, 568, 370 N.E.2d 188, 191 (1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978) (citations omitted).

■ Baxter urges that the *most* Holding could expect from the contract is a $10,000 investment in EPI. Holding, however, urges that the $10,000 investment represents all of the stock of EPI. Although the district court did not engage in a lengthy analysis construing the contract, it is clear beyond argument that the district court interpreted the agreement to mean that 100% of EPI would be transferred. For the following reasons, we agree.

The first page of the Agreement states that Medcom owned or would own at closing all of the stock in the subsidiaries listed on Schedule 4. This schedule listed the $10,000 investment in EPI, though it also referred to the limiting language of Schedule 1. The statement that all of the companies listed on Schedule 4 were to be wholly-owned subsidiaries at closing is enough to convince us that the agreement was meant to transfer all of EPI. Baxter, however, argues that the limitation on Schedule 1 overcomes this interpretation. The reference to EPI on Schedule 1 is "Investment in Entertainment Partners, Inc. (see Schedule 4) is not documented and no interest or dividend payments have been received." (JX 1 at 38). This statement alone is not enough to overcome the affirmative representation that Medcom would own 100% of EPI at closing.

The statement on page 1 of the agreement is a clear and affirmative statement. It is susceptible of only one meaning—that Medcom would own 100% of the subsidiaries listed on Schedule 4, including EPI. The statement at Schedule 1, however, does not logically force the conclusion that Medcom does not own EPI or does not warrant that it owns EPI, especially when read in light of the language on page 1. It is simply a statement that the interest is undocumented. That could mean several things. If the statement had been "Seller

does not know or warrant that Medcom owns or will own 100% of EPI" or something to that effect, this would have overcome the clear and specific language of page 1 of the agreement that Medcom *would* own 100% of EPI. In sum, the language in Schedule 1 is some kind of a general disclaimer, whereas the language on the first page of the agreement is specific and clear. The language at Schedule 1 is not clear without reference to Schedule 4 and page 1, and the contract must be construed as a whole.

■ Furthermore, the language at paragraph 5(h) does not alter the above conclusion by making the reference on Schedule 1 any more specific. Paragraph 5(h) warrants good and marketable title to subsidiaries except as listed on Schedule 1. This general disclaimer language refers back to Schedule 1 for specificity, and Schedule 1 did not disclose that Baxter did not have marketable title to EPI. It is a well-settled principle of contract construction that where a contract contains both general and specific provisions relating to the same subject, the specific provision controls. *Wilson v. Wilson*, 217 Ill.App.3d 844, 160 Ill. Dec. 752, 757, 577 N.E.2d 1323, 1328 (1st Dist., 1991); *see also BeerMart, Inc. v. Stroh Brewery Co.*, 804 F.2d 409, 411 (7th Cir.1986).

■ In addition, we are to construe a contract so that each provision or clause is given full force and effect and so that the terms make sense when read together. *Gay v. S.N. Nielsen Co.*, 18 Ill.App.2d 368, 376, 152 N.E.2d 468, 473 (2d Dist.1958); *see also Hanley v. James McHugh Constr. Co.*, 444 F.2d 1006, 1009 (7th Cir.1971). If we were to accept Baxter's assertion that Schedule 1 disclaims any interest in EPI, the clause on page 1 of the agreement and the listing of EPI on Schedule 4 would have no significance. Therefore, we conclude that the district court's interpretation of the contract is correct; thus, the agreement should be construed to give Holding 100% of EPI.

■ Baxter also argues that specific performance was not an appropriate remedy. Unlike contract construction, this is a ques-

tion of equity and we will reverse only for abuse of discretion. *Chariot Holdings, Ltd. v. Eastmet Corp.*, 153 Ill.App.3d 50, 56, 106 Ill.Dec. 285, 290, 505 N.E.2d 1076, 1081 (1st Dist.1987); *see also United States v. Peters*, 777 F.2d 1294, 1298 (7th Cir.1985).

Baxter urges that the listing of EPI was a mistake and that specific performance is not warranted when a contract is entered into mistakenly. Baxter also argues that specific performance is inappropriate because the result would give Holding a windfall. We have considered all of Baxter's properly presented arguments on these two points and find them unpersuasive.

■ Baxter also urges that Holding had an adequate remedy at law and was therefore not entitled to specific performance. However, we have recognized that a contract for the sale of corporate stock not publicly traded can be specifically enforced on the ground that valuation is imprecise without an active market for the stock. *King v. Stevenson*, 445 F.2d 565, 572 (7th Cir.1971). Furthermore, specific performance is also appropriate for breach of a contract to sell a business because a business is a unique asset. *See Triple–A Baseball Club Associates v. Northeastern Baseball, Inc.*, 832 F.2d 214, 224 (1st Cir. 1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). EPI's stock is not publicly traded, and EPI is a unique business. Holding's founder, John Manley, is in the business of purchasing companies in order to "turn them around" (Manley, Tr. 1934.). He purchased Medcom even though it had been losing money for several years (Manley, Tr. 1949.). In purchasing businesses, Manley looked for the right "building blocks". (Manley, Tr. 1938.) Without all the blocks, it is conceivable that the chances of a successful "turn-around" might be lowered. EPI could well be one of those building blocks necessary to turn Medcom around. If this is true, damages could not fairly compensate Medcom for its injury. We find no abuse of equitable discretion on this point. Because EPI is unique both as a business and as a building

block for Medcom's turn-around, we agree with the district court that as a matter of equity, specific performance is an appropriate remedy.

 Finally, Baxter argues that because Medcom argued its damages case to a jury, it elected damages as a remedy and is not entitled to specific performance.[2] At first blush it would seem that this case presents an election of remedies problem, but we conclude that the election of remedies doctrine does not apply to this case. The problem seems to be that the doctrine's name implies a very broad scope, leading one to think that the doctrine might apply in situations where it truly does not.

In *Roberts v. Sears, Roebuck & Co.*, 617 F.2d 460, 464–65 (7th Cir.), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980), we held that once a case for damages had been argued to the jury, an election for damages had taken place and equitable relief was precluded. There is no dispute that Holding argued damages to the jury. Baxter concludes from this fact that Holding has "elected" damages and is therefore not entitled to specific performance. However, *Sears* involved a situation in which the plaintiff had received both damages on the contract and a remedy of rescission of the contract. In order to receive damages, a plaintiff must affirm the contract, but in order to get a remedy of rescission, a plaintiff must disaffirm the contract. The concept of election of remedies as presented in *Sears* seems to be one that requires a plaintiff to choose whether to affirm or disaffirm a contract; not necessarily choose a specific remedy before arguing to a jury. For this reason, *Sears* is distinguishable from this case. *Sears* does not apply in a case where damages and specific performance are sought because the remedies of specific performance and damages on a contract are not inconsistent for purposes of the doctrine.

Other courts agree. The Third Circuit has stated:

The doctrine of election of remedies is regarded as being an application of the law of estoppel, upon the theory that a party cannot in the assertion of his right occupy inconsistent positions in relation to the facts which form the basis of his respective remedies; it is based on the proposition that, when a party has two remedies proceeding upon opposite and irreconcilable claims of right, the one adopted excludes the other.

The so-called "inconsistency of remedies" is not an inconsistency between the remedies themselves, for this may often happen when the same facts are relied upon as the basis of the several alternative remedies; but it means that a certain state of facts relied upon as the basis of a certain remedy is inconsistent with and repugnant to another certain state of facts relied upon as the basis of another remedy....

When a certain state of facts under the law entitles a party to alternative remedies, both founded upon the identical state of facts, these remedies are not considered inconsistent remedies, though they may not be able to "stand together"; the enforcement of the one remedy being a satisfaction of the party's claim. In such case the invocation of the one remedy is not an election which will bar the other, unless the suit upon the remedy first invoked shall reach the stage of final adjudication, or unless by the invocation of the remedy first sought to be enforced the plaintiff shall have gained an advantage thereby or caused detriment or change of situation to the other.

When either party to a contract for the sale of land has failed in his obligation, the other is entitled to the alternative remedy of specific performance in equity or damages at law. They are not inconsistent remedies.

2. Election of remedies is usually treated as an affirmative defense that must be raised in the answer to the complaint. *See Midcoast Aviation, Inc. v. General Electric Credit Corp.*, 907 F.2d 732, 740 n. 4 (7th Cir.1990) (citing *Kuhl v. Hayes*, 212 F.2d 37, 39 (10th Cir.1954); *Bagwell*

*v. Susman*, 165 F.2d 412, 415 (6th Cir.1947). We note, however, that Holding did not expressly request specific performance in its complaint. Therefore, Baxter was not required to plead election of remedies as an affirmative defense in its answer.

*Abdallah v. Abdallah,* 359 F.2d 170, 174–75 (3rd Cir.1966) (internal quotations omitted) (quoting *McMahan v. McMahon,* 122 S.C. 336, 115 S.E. 293, 294–95 (1922)). *See also, Claxton v. Small Business Admin. of the United States,* 525 F.Supp. 777 (S.D.Ga.1981); *Landsing Properties v. OKC Apartments, Ltd.,* 496 F.Supp. 5 (W.D.Okla.1979).

Election of remedies applies in other areas where a plaintiff must choose "between claiming damages for the wrong done to him and seeking to restore some former equilibrium by rescission or otherwise." DAN DOBBS, LAW OF REMEDIES 15 (1973). This pattern is observable when a person has been induced to enter a contract by fraud. After he discovers the fraud, he may affirm the contract and seek damages or he may disaffirm the contract and seek restitution. The same pattern may be observed where there is a material breach and the plaintiff may choose a suit for damages or a suit for rescission and restitution. Other cases involving election of remedies include conversion cases, where the plaintiff may recover damages for conversion of property or may elect to sue to regain the property in replevin, *Johnston v. Cincinnati, N.O. & T.P. Ry. Co.,* 146 Tenn. 135, 240 S.W. 429 (1922) or where a party seeks both a recovery under labor laws and under civil rights laws. DAN DOBBS, LAW OF REMEDIES 15 (1973).

The principle underlying the election of remedies doctrine is that the defendant could be prejudiced if the plaintiff were not forced to choose the form of his action fairly early in the game. For example, if a plaintiff were allowed to sue for damages on a contract, the defendant would rightly believe that the plaintiff was affirming the contract. The defendant would continue to perform other aspects of the contract and would expect performance of the plaintiff.

If, however, the plaintiff could later sue for rescission, the defendant would have been prejudiced by his reliance on the damages suit. Therefore, the election of remedies doctrine does not necessarily operate to force plaintiffs to elect a remedy, but to elect how they will proceed to recover for their injury. Forcing the plaintiff to elect the form of the proceedings is merely a requirement erected to prevent the defendant from being prejudiced. In a case involving specific performance and damages, this possible prejudice does not exist because both remedies depend upon an affirmance of the contract.[3] This determination is consistent with *Rotogravure Service, Inc. v. R.W. Borrowdale Co.,* 77 Ill.App.3d 518, 32 Ill.Dec. 762, 769–70, 395 N.E.2d 1143, 1150–51 (1st Dist.1979) where an Illinois court determined that election of remedies did not prohibit the pursuit of damages in lieu of specific performance. The court noted that damages and specific performance were not so inconsistent and irreconcilable that the choice to pursue one would logically renounce the other. *Id.,* 32 Ill.Dec. at 769, 395 N.E.2d at 1150.

This proposition becomes more clear under the liberal pleading rules of the Federal Rules of Civil Procedure, because a plaintiff can seek both specific performance and damages in the same complaint.[4] While it is clear that the plaintiff cannot recover both damages and specific performance, the plaintiff is not required to choose one over the other at the pleadings stage. Furthermore, with the merger of law and equity in the federal courts, when a case presents mixed questions of law and equity, a jury will determine the legal questions before a judge will determine equitable issues. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). In a case such as this where the plaintiff is alleging breach of a contract, violation of

---

3. Commentators agree with this proposition. Dobbs cites a case where the election of remedies doctrine was applied to a case involving specific performance and damages. His reference to this case is meant to illustrate the point that "the term, 'election of remedies' is used loosely or non-technically or is simply misunderstood and misapplied...." DAN DOBBS, LAW OF REMEDIES 16 (1973).

4. According to Federal Rule of Civil Procedure 8(a)(3) "[r]elief in the alternative or of several different types may be demanded" in the pleadings. Furthermore, Federal Rule of Civil Procedure 8(e)(2) allows a party to set forth two or more statements of a claim regardless of consistency.

securities laws, and fraud, the equitable issue of specific performance cannot be decided by a judge until the jury has decided the legal questions. In this case, the jury determined that Baxter had violated federal securities law and had made fraudulent representations in the formation of the contract. (R. 471.) It also made a specific finding that Baxter had breached the contract with regard to EPI. (R. 471.) With this finding of liability, the district court was free to award the equitable remedy of specific performance.

Perhaps what Baxter is attempting to argue here is not election of remedies but an equitable principle that a plaintiff cannot recover twice for the same injury. We agree with this principle, and we agree that it might apply in this case. Holding urges that there is no possibility of double recovery because damages reflect the injury they received when Baxter misrepresented the nature of EPI on the balance sheet and specific performance reflects the injury they received when they did not receive EPI. We disagree. If Holding receives 100% of EPI through specific performance, there is no injury resulting from showing a $10,000 investment in EPI on the balance sheet. In fact, it seems that Holding would receive a benefit rather than an injury because apparently the $10,000 investment in EPI shown on the balance sheet did not adequately represent the true value of EPI. We note, however, that this potential for double recovery need not trouble us here. There has been no final judgment entered on damages. The district court will be conducting a third trial on damages and is free to exclude from consideration damage relief with regard to EPI. There has been no double recovery as yet, and Baxter therefore cannot argue that the award of specific performance was an abuse of equitable discretion because it allowed double recovery.

AFFIRMED.