142 F.3d 439
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CITY & SUBURBAN DISTRIBUTORS ILLINOIS, INCORPORATED,
Plaintiff-Appellant,
v.
STROH BREWERY COMPANY, Defendant-Appellee.
 No. 97-2668.
 United States Court of Appeals, Seventh Circuit.
 Argued February 27, 1998.
Decided April 30, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 87 C 140, John A. Nordberg, Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. DANIEL A. MANION, and Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 In the mid-1980s City & Suburban Distributors Illinois, Inc. ("C & S") was Stroh Brewing Company's exclusive beer wholesaler for a significant portion of Chicago. In September 1986 Stroh terminated the agreement because of an unauthorized control change at C & S. This caused C & S to sue Stroh in the Circuit Court of Cook County, Illinois. This in turn prompted the parties to settle the lawsuit, which was dismissed under a September 15, 1986 Letter Agreement. That Agreement permitted C & S to continue as a Stroh wholesaler for 90 days while attempting to sell its business to a purchaser acceptable to Stroh. Otherwise, C & S would cease to be a Stroh distributor and Stroh would buy its products back from C & S at an agreed price.
 
 
 2
 After the Letter Agreement was signed, C & S negotiated with another distributor of Stroh products, Vierk Distributing Company, for the sale of C & S's distributorship. However, Stroh then refused to approve Vierk as a purchaser of the business. The original 90-day period was extended several times but C & S was unable to locate another purchaser for its business and Stroh was unwilling to agree to a further extension. In February 1987 C & S again sued Stroh in the Circuit Court of Cook County seeking injunctive relief against termination of the wholesaler's agreement between the parties. On the same day, that court granted C & S a temporary restraining order. Stroh subsequently removed the case to the court below. On March 12, 1987, C & S obtained a preliminary injunction enjoining Stroh from terminating C & S. In granting the injunction, the district judge stated that Stroh's reasons for refusing to approve Vierk were improper and that Vierk seemed to be a logical choice to take over C & S's territory. Eleven days later, Stroh notified C & S that it would approve Vierk as the purchaser of C & S's distributorship.
 
 Discussion
 
 3
 In April 1988, more than a year after Stroh's approval, C & S finally sold its business to Vierk and C & S sought $1,000,000 damages from Stroh based on the difference between the price it could have obtained before Stroh had denied consent and the price C & S ultimately obtained (Stroh Br. 13). The district court denied such damages because they resulted from the 13-month delay in C & S's consummating a sale to Vierk, rather than from Stroh's improper refusal to approve Vierk at the outset. We agree.
 
 
 4
 C & S also seeks to recover $2,250,000 resulting from the 13-month delay in selling its business. However, C & S has failed to show that Stroh did anything to cause the delay. Therefore the district court properly granted summary judgment to Stroh. C & S had been successful in obtaining injunctive relief so that it could pursue the best offer to buy its business without Stroh's interference. Since the injunction given to C & S provided it with full relief, it cannot recover damages as well, at least not without showing that Stroh's breach somehow caused the delay in completing the sale. Medcom Holding Co. v. Baxter Travenol Labs., Inc., 984 F.2d 223 (7th Cir.1993).
 
 
 5
 For the reasons stated here and those presented in the district court's thorough opinion, we affirm.